PERRY R. BURRELL, PLAINTIFF IN ERROR, V. THE STATE OF NEBRASKA.

1. **Criminal Law:** JOINDER OF OFFENSES IN INDICTMENT FOR MISDEMEANOR. In the case of misdemeanor several distinct offenses of the same kind may be joined in the same indictment. See *State v. Gummer*, 22 Wis., 441.

2. ———: ———: SENTENCE. In such cases a separate sentence should be passed on each count of the indictment upon which the defendant is found guilty by the verdict of the jury.

3. ———: ———: CONTINUANCE: DISCRETION OF COURT. In such case the granting or the refusal of an application for a continuance is largely within the discretion of the trial court. To enable a court of review to find reversible error in the refusal of such application, it must be shown that there was an abuse of such discretion.

ERROR to the district court for Frontier county. Tried below before COCHRAN, J.

*Rittenhouse & Starr*, for plaintiff in error, cited: Maxwell Crim. Pro., 53–54. *People, ex rel. Tweed, v. Liscomb,* 60 N. Y., 579–580–582. Maxwell Crim. Proc., 568. *Hair v. State,* 14 Neb., 505. *Ingalls v. Noble,* Id., 273. *Coleman v. People,* 58 N. Y., 555–561. *Tweed v. Liscomb,* 60 N. Y., 559. Maxwell Crim. Proc., 661–662.

*William Leese, Attorney General,* for defendant in error.

COBB, J.

This cause comes to this court from the district court of Frontier county, on error. The defendant was indicted for violating the statute regulating the sale of malt, spirituous, and vinous liquors. The indictment charged him with fifteen distinct violations of the law by selling spirituous liquors without first having obtained license therefor, one by selling such liquors on Sunday, and one by selling such liquors to a minor, in as many separate counts. The 1st, 3d, 4th, 5th, 6th, 7th, 8th, 9th, 10th, 11th, 12th, 13th, 14th, 15th, and 17th counts charged sale without license, the 2d a sale on Sunday, and the 16th a sale to a minor. The 7th count charged a sale to a minor without license. There was a plea of not guilty, and upon the trial the jury brought in a verdict of guilty as charged in the 1st, 2d, 3d, 4th, 5th, 6th, 8th, 9th, 10th, 11th, 12th, 13th, 14th, 15th, 16th, and 17th counts of the indictment.

A motion in arrest of judgment, as well as a motion for a new trial, having been overruled, the court sentenced the defendant to pay a fine of $1,525 and the costs of prosecution, and that he stand committed until such fine and costs be paid.

Burrell v. State.

The defendant assigns the following errors:

I.   In not sustaining the motion of the defendant to require the prosecution to elect upon which charge or count in the indictment the state would rely for conviction.

II.   In not granting a continuance of the action as applied for by the defendant.

III.   In refusing to allow the defendant to withdraw his former plea of not guilty in order to file a plea in abatement.

IV.   In allowing the sheriff to recall the same jurors into the box after, and in the same order, and from the same memorandum as before the challenge to the array had been sustained by the court.

V.   In allowing any evidence to be taken under and in support of the indictment herein, over the general objection of the defendant.

VI.   In not sustaining the motion of the defendant to strike all evidence given by Luther Sellers in support of the sixth count of the indictment from the record.

VII.   In not giving instruction number four, asked for by the defendant.

VIII.   In allowing the prosecuting attorney to hold the instructions that the court was to give in his hands, and read them article at a time, and comment on them to the jury while making the closing argument to the jury.

IX.   That the verdict of the jury herein returned is not supported by the evidence.

X.   That the court erred in not sustaining the motion in arrest of judgment.

XI.   The court erred in rendering judgment for $1,525.

XII.   The court erred in rendering judgment and sentence in this case in excess of the maximum penalty for one offense, to-wit, $500.

XIII.   The court erred in imposing an excessive punishment in this case, not warranted by the testimony and nature of the offense charged.

XIV.   The court erred in overruling the motion for a new trial herein.

XV.   The court erred in rendering any judgment or pronouncing any sentence in this case, for the reason that the indictment does not charge any offense under the laws of the state of Nebraska.

Before the commencement of the trial the defendant presented his motion that the court require the prosecution to elect as to which count of the indictment he will prosecute upon, for the reason that there is more than one separate and distinct offense therein charged, which motion was overruled.

Upon the overruling of the above motion and the first assignment of error, plaintiff in error raises the first point in the brief, which is, that although there were seventeen distinct offenses charged, in as many counts in the indictment, yet in point of law each of the several counts must be held to refer to the one offense, each describing it in a different manner, or in the language of the New York court of appeals in the case of *People, ex rel. Tweed, v. Liscomb,* 60 N. Y., 560, "Where, upon the trial of an indictment containing several counts charging separate and distinct misdemeanors, identical in character, a general verdict is rendered, or a verdict of guilty upon two or more specified counts, the court has no power to impose a sentence, or cumulative sentence, exceeding in the aggregate what is prescribed by statute as the maximum punishment for one offense of the character charged."

This construction of the law as contended for by counsel for plaintiff in error is entitled to very respectful and serious consideration for its inherent merit; and we have seen that it has met the approval of, if it did not emanate from, one of the ablest courts.   But the weight of authority is against it; and it appears to be generally accepted law that, where an indictment or information contains two or more counts for offenses below the grade of felony, each

charging a separate and distinct offense of the same character, such as selling intoxicating liquors without license, each count charging a sale at a different time or to a different purchaser, and upon the defendant being found guilty on two or more specified counts, he may be sentenced and punished on each of such counts upon which he is found guilty by the jury. See *Eldredge v. The State*, 37 Ohio S., 191 ; *State v. Gummer*, 22 Wis., 441 ; and *State v. Skinner*, 8 Pac. R. (Kan.), 420, all cited by the attorney general.

As we have seen in the statement of the case, the defendant was charged in one of the counts with selling intoxicating liquor to a minor, and in one with selling on Sunday, so that the offenses charged in the several counts of the indictment are not identical one with each other. But as the attention of the trial court was not called to this point in the motion for a new trial, it will not be considered here further than to say that, as it appears that the defendant was without license to sell, his sale to a minor, as well as a sale by him on Sunday, each constituted a compound offense, for which he could have been prosecuted under either of the two sections of the statute applicable thereto ; and as it required less evidence to convict for selling without license, and the punishment provided by statute is greater for that offense than for selling to a minor, or for selling on Sunday, if there was an irregularity in the apparent misjoinder it worked no hardship to the defendant.

In the motion for a new trial the defendant complains of the refusal by the court of his application for leave to withdraw his plea of not guilty in order to file a plea in abatement, and this point is insisted upon in the brief of counsel. But a careful examination of the record fails to disclose that such an application was made to the court, or any ruling of the court thereon.

Before the trial the defendant applied for a continuance

of the cause to the next term of the district court, on account of the absence of material witnesses, which application was sustained by a lengthy affidavit, and the denial of which by the court is assigned for error. From a careful examination of the affidavit in support of said application, it appears that, had all the witnesses therein named been present and testified as the affiant states they would testify, their evidence would tend to disprove some of the charges in the indictment, yet it would leave most of them substantially unaffected. It is therefore impossible for a reviewing court to say that there was an abuse of discretion on the part of the trial court in denying the application for a continuance.

The defendant challenged the array of petit jurors, for irregularity in the mode of their selection, and their unequal distribution to the several precincts of the county, which challenge was allowed by the court. Whereupon the court ordered the sheriff to forthwith call and summon from the body of the county good and lawful men, etc. The defendant, in the motion for a new trial, assigns as the fourth ground of error, the "allowing the sheriff to recall the same jurors into the box after, and in the same order, and from the same memorandum as before a challenge to the array had been sustained by the court," and the point is insisted on by counsel in the brief. It does not appear from the bill of exceptions, or otherwise, that the attention of the court was called to the matter here complained of, or any ruling made thereon before the selection of the jury and trial. Nor does it appear that any juryman was objected to or challenged, either for cause or peremptorily, by the defendant. Therefore, without expressing any opinion upon the point as made by defendant in the brief, it must be overruled here, for the reason that it is not presented in the case as made in the trial court.

The next point arises upon the refusal of the court to strike out the testimony of Luther Sellers, a witness on the

part of the state. This testimony taken by itself would amount to but little or nothing, but when taken in connection with that of Richard Fisher, a witness on the part ot the state, it quite clearly establishes the charge of selling intoxicating liquor. The substance of Sellers' testimony is, that he was acquainted with the defendant Burrell;   *   *   *   that it was in February, or might have been in March.

Q.   State whether or not about that time you made any purchase of Mr. Burrell?

A.   I did.

Q.   What did you buy?

A.   I don't know as I know just what I did buy.

Q.   Do you remember of buying any liquor of any kind?

Objected to as leading.   Sustained.

Q.   State what you did buy.

In answer to this question he stated that on a certain day near the date charged in the indictment, about the time that Bray dug a well for D. W. Smith, Bray told him "to go down and get some of that he got at *Bob's*, and I went down and got it. I told Bob that Smith wanted some of that he got before, and he put it in a bottle, wrapped it up, and I took it back to the shop and paid forty cents for it. I put it in the drawer at the blacksmith shop, in the money drawer."

Richard Fisher testified that he was most commonly known as *Dick*—most commonly called "Dick"; is acquainted with Luther Sellers; remembers being in Smith's blacksmith shop along in March, 1888, during the time that Bray was digging a well for Smith; remembers having something to drink there, which was bought by Mr. Sellers.   And being further examined, answered as follows in reply to—

Q.   State to the jury what, if anything, you drank?

A.   Well, I drank something, I don't know what you call it?

Q.   State to the jury what you would call it, to the best of your judgment?

A.   Well, I hardly know what it was, most call it whiskey.

Q.   State what it tasted like, if you know?

A.   I don't hardly know what it tasted like most.

Q.   Did you ever taste whiskey?

A.   Yes, sir.

Q.   Did this taste like what you drank before for whiskey?

A.   It tasted something like it, yes, sir.

Q.   When was this?

A.   I don't remember just when it was.

Q.   About how long ago.

A.   It has been three weeks or a month, something like that.

Q.   State, if you know, where Mr. Sellers got that?

A.   I don't know where he got it.

Q.   Where did he take it from in the shop?

A.   I don't know where he got it from in the shop.   I never saw it till Sellers had it in his hand.   Where he got it I don't know.

Q.   What was this you saw him have in his hand, to the best of your judgment?

A.   Well, I suppose it was whiskey.

Q.   It was whiskey?

A.   That's what I suppose they call it.

Taking the testimony of these two witnesses together, it was evidence to go to the jury in support of the charge against the defendant for selling liquor to Luther Sellers.

At the trial the defendant requested the court to give the following instruction, which was refused:   "You are further instructed that when an indictment, in setting out or describing a substantive part of a criminal charge, contains allegations which might have been omitted, it will still be necessary for the state to prove them as alleged, or

the indictment will fail as to such charge. Such allega-. tions if made, it cannot be regarded as surplusage."

This instruction, though not carefully drawn, was in-. tended to state a correct principle of law applicable to the. construction of indictments. Had the draughtsman of· this instruction distinguished between allegations which are merely superfluous, and hence might have been omitted,. and allegations which, by reason of entering into minute and unnecessary descriptions of an offense, in fact amount-. ing to distinct qualifications of such offense, thereby clearly distinguishing it from offenses of the same character in general, then I should say that the principle of the in-. struction is correct. The instruction does not fall far· short of that quality, but the defendant does not in his brief point out the count in the indictment or the evidence in the case to which the instruction is applicable; nor have. I been able from a somewhat careful examination of the. record to make the application. This is the only question raised on the instructions refused or given.

As this is a case of importance, and as it may be ex-. pected that it will be followed by others of a similar char-. acter, I deem it proper to depart from the usual course by calling attention to one of the instructions not complained of by defendant, and which, for that reason, of course can, form no basis for action in this court.

No. 3, of instructions given on the part of the state, is. as follows: "The jury are instructed that if you find from the evidence that the parties named in the indictment to whom intoxicating liquor is alleged to have been sold,. went into the store where the defendant was in charge, and where intoxicating liquor was kept for sale, and there called for intoxicating liquor of any kind, the law pre-. sumes the parties received the article called for, unless you further find that the defendant informed the persons at the time that he did not keep for sale the article called. for."

This instruction ought not to have been given. It is, no doubt, true that when a person goes into a store where intoxicating liquors are kept for sale, and calls for a certain kind of liquor, and the person in charge of the store hands out to him that which, from its appearance, by the package or vessel in which it is kept, or from other circumstances, appears to an observer to be liquor of the kind called for, it may be presumed to be intoxicating liqour of the kind called for, but it is hardly necessary to say that no such presumption arises from the failure of the person in charge of the store to inform the customer that he did not keep for sale the article called for. But, as above stated, the instruction not being excepted to, constitutes no ground for reversal in this case.

The next point raised by the counsel for the plaintiff in error in the brief is, that the county attorney was allowed by the court to hold the instructions which the court was to give in his hands, and read them, article at a time, and comment on them to the jury while making his closing argument. In the bill of exceptions the following entry appears immediately after the close of the cross-examination of the witness Baker, called on the part of the defendant: "Mr. Stewart opened the case for the state; the defendant objects to the prosecuting attorney holding the instructions to be given in the case by the court, and reading the same item at a time, and commenting to the jury thereon. Overruled and exception taken."

Counsel contend that to allow the district attorney to comment on the instructions is a violation of the provisions of section 56, chapter 19 of the Compiled Statutes, that " no oral explanation of any instruction authorized by the preceding sections shall, in any case, be allowed, and any instruction or charge, or any portion of a charge or instructions given to the jury by the court, and not reduced to writing as aforesaid, or a neglect or refusal on the part of the court to perform any duty enjoined by the preced-

ing sections, shall be error in the trial of the case, and sufficient cause for the reversal of the judgment rendered therein." The oral explanation here prohibited is evidently explanations by the court not reduced to writing. The same chapter provides that, "all instructions shall be in writing except in certain cases, that they must be read over by the court, announced as given or refused, and filed with the record."

I know of no rule, either of law or of practice, which would prohibit the counsel of either party, in summing up to the jury, from reading and commenting upon any part of the record in the case. Nor do I see any reason why that part of the record which had just been announced by the court as embracing the law of the case should be an exception. A court will generally refuse to allow counsel who have the opening and closing argument to argue questions in their closing speech not before raised, and thereby depriving the other party of an opportunity to answer. But such is not the complaint in this instance, and if it were, it would have to be more definitely stated, so as to exhibit an abuse of discretion on the part of the trial court, to entitle it to serious consideration here.

The counsel for the plaintiff in error directs particular attention to what he claims to be a failure in the testimony to prove the *fifth* count in the indictment, which charges that on the 10th day of March, 1888, the accused sold whiskey to one D. W. Smith. It is true that Smith, when on the witness stand, failed to state that he bought whiskey from the defendant at the time mentioned. It is equally true that he was not asked to state or to give a name to the article which he purchased of the defendant. He does state that, on or about the date charged in the indictment, one Charles Bray was employed digging a well for witness, and that at his request witness went to the drug store of the defendant, and bought something, for which he paid

forty cents; that it was liquid, put up in a half pint bottle, of a reddish color; that witness took it to his shop and sent it down the well in a bucket to Bray, who was digging in the well. This witness was followed in the examination by Bray, who testified that he was employed by D. W. Smith, was at work for him in March, 1888, digging a well; that while so employed he sent Mr. Smith to the store of defendant to get him something to take,— "that is what I told him to get; that he brought him something that he supposed was poor whisky; that that was what he meant for him to get; that it looked like whiskey, was the color of whiskey, and witness would say from all appearance it was whiskey."

The cross-examination of this witness by defendant's counsel was such as to leave no doubt that the article for which he sent Smith to buy, which Smith bought at and brought back from the defendant's drug store was whiskey.

The next witness, John Jones, also testified that he took a drink out of the half pint bottle just before it was sent down into the well to Bray, and so far as one of his limited experience could testify it was whiskey.

I think this evidence sufficiently proves the charge of selling whiskey to D. W. Smith.

The 8th, 9th, and 10th counts charge the sale of whiskey to Benj. F. Buckley. This witness was called on the part of the state, and was submitted to a thorough and searching examination by the prosecuting attorney. He testified to making three separate purchases from the defendant of something which the county attorney sought in vain to make him testify was spirituous or intoxicating liquors. But he, in no part of his testimony, stated it to be such as a fact, or even give an opinion that it was either malt, spirituous, vinous, or intoxicating liquor, nor did he give it any name, or state that it contained any ingredient except ginger, pepper, and water. He was treated as an unwilling witness, and his examination was

in the nature of a cross-examination, which was probably justifiable under the circumstances, and justifiable for the reason that the state cannot claim a conviction upon evidence which merely casts suspicion upon the acts of an accused, but must prove criminating facts. This it failed to do, so far as these three counts of the indictment are concerned.

In the seventeenth count is charged the sale of whiskey to one Horace Miller, who was called as a witness on the part of the state, and testified that he bought a pint of white liquor, or medicine, or whatever you call it, in the month of January, 1888; that he drank it up; that he supposed it tasted like liquor; that he had drank liquor before; that he did not know and could not say; that it tasted like liquor that he had drank before; that he paid fifty cents for it; that it looked like water, and thinks it also looked like liquor; that it was about a couple of months ago, may be longer; that it was in Frontier county, Nebraska; that he bought it from Mr. Burrell. This witness did not use the word whiskey, nor that of any malt, spirituous, vinous, or intoxicating liquor, nor use any word by which such liquors are usually designated. And it may be remarked that no other witness testified as to sales to the man Miller. The same may be said of the alleged sales to Buckley.

While it is not intended to erect any rigid rule of evidence in cases of this kind, but, on the contrary, to allow the prosecution the greatest latitude of examination of witnesses and the production of evidence to prove offenses of this kind, yet it must be borne in mind that evidence which merely tends to cast a suspicion against an accused is not sufficient to establish his guilt, even in this class of offenses.

We have already seen that the 7th count charges the sale of whiskey to one W. C. Saunders, "he then and there being a minor under the age of 21 years, and the

38

said Perry R. Burrell not having procured license to sell the same as provided by law." There was no finding by the jury on this count. Had the attention of the court been called to this omission in a motion for a new trial, there must, as I conceive, have been a new trial granted. But no attention was called to it.

It will be borne in mind that the jury found the defendant guilty on sixteen of the seventeen counts of the indictment, one of which was for selling to a minor, for which the law fixes the punishment at a fine of twenty-five dollars. The sentence should have been, upon the theory that the verdict is sustained by the evidence, that the defendant pay a fine of so much for the offense for which he stands convicted upon the first count of the indictment, and so on; but instead thereof there is one solid fine assessed against the defendant for the sum of fifteen hundred and twenty-five dollars.

We have seen that there is no evidence to sustain the judgment as to four of the counts. Had a separate fine been assessed as to each count upon which there was a finding by the jury, only those upon the counts where the finding is unsustained by evidence would be reversed. But as the fine and judgment are *in solido*, it must be said that the judgment is unsustained by the evidence, and it must be reversed.

The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.