TERRITORY, Defendant in Error, *v.* PRATT, Plaintiff in Error.

### 1. Criminal Law — Indictment — Objections to, how Raised.

An objection that an indictment does not show that the grand jury was impaneled, charged and sworn, or that it was not found, or presented at a term of court, cannot be raised for the first time after conviction where by statute such objections are required to be presented before plea, and an omission to do so precludes their afterward being raised.

### 2. Jury — Competency of Juror.

Where, on the examination of a juror as to his qualifications to sit in a prosecution for selling intoxicating liquors without a license, he stated he considered the sale of such liquors wrong even with a license and that a witness' being engaged in that business would affect his credibility with him (the juror), but that he would give his testimony the same consideration under all the circumstances as that of a witness in any other calling, and that its being a liquor prosecution would not influence his verdict, *held*, the trial court's denial of a challenge for actual bias ought not to be disturbed.

### 3. Statutes — Construction — Intoxicating Liquors, Sale of.

The provisions of chap. 26, Laws 1879, making unlawful the sale of intoxicating liquors without a license, remain in force in a county even though it may have adopted prohibition under the local option law, chap. 70, Laws 1887, and a party may be prosecuted under the Act of 1879, although prohibition was in force in the county at the time of the commission of the alleged offense and had been rejected when the indictment was found.

### 4. Same — Trial — Instructions.

Where a prosecution for selling intoxicating liquors rested on the testimony of the prosecuting witness, the court charged the jury that the only evidence they could consider as to the intoxicating character of the liquor was that of this witness, " who claims that he tasted it the day he bought it, and before it left his hands and control," but informed them that they had " a right to believe or disbelieve his testimony," and the matter was purely one of fact for them, *held*, there was no error committed under § 377, C. Cr. Pro., which provides that " in charging the jury the court must state to them all matters of law which it thinks necessary for their information in giving their verdict, and if it state the testimony of the case, it must, in addition, inform the jury that they are the exclusive judges of all questions of fact."

### 5. Same — Appeal — Review — Sufficiency of Evidence.

Where, on a trial for selling intoxicating liquors without a license, the prosecuting witness testified positively that he tasted the liquor, that it was whisky, and that he knew that kind of liquor from having drank it before, *held*, the verdict was supported by evidence.

(Argued May 16, 1889; affirmed May 31; opinion filed October 10, 1889.)

APPEAL from the district court, Spink county; Hon. L. W. Crofoot, Judge.

*H. C. & T. J. Walsh, N. P. Bromley* and *George Cooper*, for plaintiff in error.

The repeal of a statute creating an offense sweeps away all penalties incurred for its violation during its existence. State v. Gumber, 37 Wis. 298, 302; Wells v. State, 5 S. W. Rep. 830; Whisenhunt v. State, 18 Tex. App. 491.

Two questions arise: Does the "Local Option Law," chap. 70, Laws of 1887, create an offense? Does the vote of 1888 act as a repeal of it in Spink county?

The statute is susceptible of two constructions: 1. That it creates, defines and provides for the punishment of a crime, that is, makes the doing of certain acts under certain circumstances criminal, and imposes penalties for the commission of these acts under those circumstances. 2. That it is a mere limitation upon the powers of the board of county commissioners, the elements of the offense being defined and the penalty for its commission being prescribed by the old law.

Prior to the passage of this law, the policy of the territory as evidenced by its various statutes, was not to suppress and prohibit, but to regulate, control and license the sale of intoxicants. People v. Sweetser, 1 Dak. 295.

This statute marks the initiation of a wholly variant policy. Its purpose is to prohibit the sale by local option. License after the passage of this act would constitute no defense, nor its want be of the gist of the offense. State v. Hanley, 25 Minn. 429.

From these considerations it would seem that the local option law does create an offense. Territory v. O'Connor, 5 Dak. 397, 41 N. W. Rep. 746.

What was the effect of the vote of 1888? Under a statute identical in all essential particulars with this, it has been held that the vote operates as a repeal. Woodlief v. State, 2 S. W. Rep. 812; Wells v. State, 5 id. 830; Haflin v. State, 5 Tex. App. 212; Mulkey v. State, 16 id. 53; Dawson v. State, 8 S. W. Rep. 820; Whisenhunt v. State, 18 Tex. App. 491.

The jurors, Thompson and Beckley, were incompetent, and

should have been excused. It matters not that they said they could try the case impartially. The more prejudiced a man is, as a general rule, the more positive his opinion of his impartiality.

The court, in its charge, said that the witness Parsons " claims to have tasted it (the liquor) the day he got it, and before it left his hands and control." The evidence certainly does not show any thing of the kind. An instruction which misrepresents the evidence before the jury is erroneous. Frame v. Badger, 79 Ill. 441 ; Prairie State Co. v. Doig, 70 id. 52 ; Neil v. Paul, 22 Cal. 494 ; Burke v. Maxwell, 87 Pa. St. 139, 153 ; People v. Casey, 3 Pac. Rep. 874.

It should appear from the indictment that it was presented at a term of court by a competent grand jury. State v. Hogan, 30 Wis. 433 ; State v. Delue, 2 Pin. 204 ; Fitzgerald v. State, 4 Wis. 395 ; Benedict v. State, 12 id. 313.

*Johnson Nickeus, Attorney-General,* and *R. B. Hassell,* for defendant in error.

As to the effect of the adverse vote of 1888, plaintiff relies on an ancient rule, never well founded, and which the statutes of this territory provide shall have no force. As to the nature of a local option law, that a vote does not repeal it, and that the gist of the offense is the same both before and after the vote, see State v. Smiley, 7 S. E. Rep. 904 ; State v. Funk, 7 N. W. Rep. 151 ; State v. Circuit Court, 1 L. R. A. 66 ; State v. Wilcox, 19 Am. Rep. 536 ; Territory v. O'Conner, 5 Dak. 397, 41 N. W. Rep. 746.

The jurors, Thompson and Beckley, were qualified to sit. §§ 7358, 7439, Comp. L. ; Thomp. & M., Juries, 228–9 ; Grisson v. State, 2 Texas, 376 ; People v. Goldenson, 19 Pac. Rep. 161 ; People v. McQuade, 18 N. E. Rep. 156.

There was sufficient evidence that the liquor purchased was whisky.

The Code of Cr. Pro., §§ 7370, 7405, Comp. L., permits the court to state the testimony. The court did that only. There was no misrepresentation of it, and nothing said as to its weight. The instruction was an attempt to limit the jury in the consideration of the testimony, so that the rights of the defendant under the evidence might be preserved.

The defendant never moved to set aside the indictment in the lower court on the grounds complained of. He is now precluded from doing so. § 7284, Comp. L. Our Code does not require that the indictment should show that the grand jury was summoned, impaneled, sworn, etc. § 7249, Comp. L.; Stevens v. State, 76 Ga. 96; 5 A. C. Rep. 601.

AIKENS, J. The plaintiff in error was indicted, tried and convicted for selling intoxicating liquors without a license. The indictment recited facts leading up to the adoption in Spink county, on November 8, 1887, of what is commonly termed "the local option law," and in addition charged that the defendant, on the 22d day of October, 1888, did sell intoxicating liquor in said county in less quantities than five gallons, to-wit, one-half pint of whisky, to one Peter Parsons, without any authority or license therefor.

No motion was made by the defendant affecting the indictment, and a jury was impaneled upon a plea of not guilty.

The defendant assigns seven distinct grounds of error in support of his writ, as follows: (1) The indictment is fatally defective for reasons set forth in the motion for a new trial. (2) The court erred in overruling the challenge of plaintiff in error to Juryman Beckley. (3) The court erred in overruling the challenge of plaintiff in error to Juryman Thompson. (4) The court erred in admitting any further testimony after the admission made by the district attorney, at the commencement of the trial, substantially that the law alleged to have been violated was repealed by vote of the people prior to the trial and finding of the indictment. (5) The court erred in instructing the jury that the witness Parsons claims to have tasted it (the liquor) the day he bought it, and before it left his hands and control. (6) The verdict is unsupported by the evidence, in that there is no proof that the liquor sold was whisky. (7) The judgment is wrong, because the record shows that the law alleged to have been violated was repealed prior to the trial and the finding of the indictment.

The reasons referred to in the first assignment of error, as being contained in the motion for a new trial, are as follows: "The indictment is materially defective in that it is not entitled in a court having authority to receive it, but shows on its face that the

court in which it was found had no jurisdiction of the crime charged ; nor does it show that the jurors by whom it was found were ever impaneled, charged, or sworn, or that the indictment was found or presented at a term of court, general or special."

The admission made by the district attorney at the commencement of the trial, referred to in the fourth assignment of error, is to the effect that at the general election held in Spink county, in 1888, upon the submission of the question, in conformity with the provisions of the local option law, the vote was in favor of the sale of intoxicating liquor in said Spink county, and the result thereof was legally declared before the finding of the indictment in this case.

The errors assigned will be considered in their order.

1. We are at a loss to ascertain from the record or from the brief of counsel, first, what is intended by asserting that the indictment is not entitled in a court having authority to receive it. The title refers to the territory, the county, and judicial district, and gives each correctly.  Section 214 of the Code of Criminal Procedure provides that " the indictment must contain the title of the action, specifying the name of the court to which the indictment was presented, and the names of the parties."  Section 222 provides that " the indictment is sufficient if it can be understood therefrom that it is entitled in a court having authority to receive it, though the name of the court be not stated."  The indictment was properly entitled under our Code.  As to the objection that the indictment does not show that the jurors were impaneled, charged, or sworn, or that the indictment was found or presented at a term of court, general or special, it cannot be raised for the first time after conviction.  The indictment should have been attacked by motion to set it aside before plea entered. Failure to do so precludes the defendant from taking the objection later.  § 256, Code Crim. Proc.

2. The second and third assignments, raising substantially the same questions, will be considered together.  Defendant's counsel challenge the Jurymen Beckley and Thompson for cause, claiming actual bias.  The district attorney resisted the challenge, and the court overruled the same.  The full examination of the jurymen is reported to aid in a clear understanding of the exceptions:

"*Examination of Juryman Thomson:*   *Q.* Are you opposed to the licensing and sale of intoxicating liquors ?   *A.* Yes, sir. *Q.* Have you any very positive conviction upon that question ? *A.* Well, I am positive I wont vote for license.   *Q.* You think it is wrong to sell intoxicating liquors, whether licensed or not licensed ?   *A.* Yes, sir.   *Q.* Are your convictions very strong upon that ?   *A.* Strong enough not to vote for license. *Q.* Would your convictions on that question bias or prejudice your mind in any testimony in the trial of an action of this kind ?   *A.* It might, possibly, where a man sells in defiance of law.   *Q.* Mr. Thompson, you believe that the sale of intoxicating liquors, whether licensed or unlicensed, is a moral wrong ?   *A.* Yes, sir.   *Q.* And that any one engaged in that business is on a rather lower plane of morals than a man engaged in any other line of business ?   *A.* I would not like to say that.   I say they are engaged in an immoral calling.   *Q.* If a man engaged in that kind of business came upon the stand to testify, would you give to his testimony the same weight and credence that you would to the testimony of a man engaged in any other business, other things being equal ? *A.* Well, I would be governed by circumstances.   *Q.* Supposing the circumstances the same in one case as in the other, and one man engaged in the business of selling intoxicating liquors, and another man engaged in another line of business, testify directly opposite, would you give the man engaged in the sale of intoxicating liquors the same weight and credence as you would to the man engaged in the other business ?   *A.* I think it would affect me.   *Q.* The weight that you would give to the testimony ?   *A.* Yes, sir.   *By the Court.*   *Q.* If a witness were upon the witness stand who had confessed that his business was that of selling intoxicating liquors, would you judge of his testimony — the credibility of his testimony — by the same facts and circumstances that you would the credibility of a witness engaged in another business ; that is, without allowing the question of what business he was engaged in, weigh against his credibility ?   *A.* I think I could do that.   *Q.* It is not a question of whether you could do it or not, but is there a prejudice against the business itself in your mind that it would probably affect the weight you would give to the testimony of the witness engaged in that business ?   *A.* Well,

I don't carry any prejudice in my mind against those engaged in it. My opinion about the sale is that it is wrong. I don't charge my mind against any man who is selling it. I think I could give an impartial verdict. I would not allow my prejudice to swerve my judgment. *Q.* You don't think the prejudice you have against intoxicating liquor would extend to the persons engaged in selling it? *A.* No, sir. *Q.* So, then, the fact that they were engaged in selling intoxicating liquor would not tend to disparage their testimony in your mind? I am not speaking now of the defendant, who is charged with selling unlawfully, but any witness. Would the fact that the witness upon the stand was engaged in selling intoxicating liquor tend to disparage his testimony in your mind? *A.* I think not.

"*Examination of John Beckley : Question.* Would the fact, Mr. Beckley, that this is a prosecution for a violation of the law against the sale of intoxicating liquor in any manner affect your judgment? Would it in any way affect the verdict you would render, or bias your mind so that it would influence the verdict that you might desire to arrive at, — the fact that this is a prosecution for the selling of intoxicating liquors? *Answer.* No, sir. *Q.* Would it in any way affect the credence that you would give to the witnesses upon the stand, or weight you would give to their testimony, either on the part of the prosecution or on the part of the defense? *A.* I don't think it would. *Q.* Other things being equal, would you give the same weight, the same credence, to the testimony of a witness for the prosecution that you would to the witness for the defense? *A.* I think so. *Q.* If a witness produced for the defendant was a saloon-keeper engaged in the business of selling intoxicating liquor, would you give the same weight and credence to his testimony, other things being equal, that you would to a farmer or man engaged in any other line of business? *A.* As a general thing, I think I would. Of course, there are exceptions. *Q.* Some saloon-keepers you would believe quicker than other men? *A.* Yes, sir. *Q.* How would it be, as a general thing, would you give as ready a credence to the saloon-keeper, Mr. Beckley, as you would to a man engaged in another business, you knowing nothing at all about them except that one was a saloon-keeper and the other was not? *A.* I can't tell now.

*Q.* Will you swear that you would give as ready a credence to the witness upon the stand who confesses that he is a saloon-keeper that you would to a man engaged in any other business, other, things being exactly equal? *A.* I would not like to, under all circumstances. *Q.* In such a circumstance as this, where a man is on trial for selling intoxicating liquor, would you then? *A.* I would believe a man if I knew he was all right otherwise. *Q.* There are two witnesses whom you have never seen before. One is engaged in the business of selling intoxicating liquor; the other, whom you have never seen before, is engaged in some other business. Would you give the same weight to the testimony of the saloon-keeper that you would to the other man? *A.* I can't tell. It would depend on what kind of testimony it was. *Q.* The testimony is exactly the same, only it is opposite. One tells one story, and the other one exactly opposite. The testimony of each, Mr. Beckley, is equally reasonable, and all other things equal, except that one man is engaged in the saloon business and the other is not. Would you give the same weight and credence to the testimony of the man who confesses that he is engaged in the saloon business as you would the other man? *A.* I don't know as I should. *Q.* You are not prepared to swear that you would? *A.* No, sir.

*Examination by District Attorney.* In a case of this kind, would you con sider the circumstances, such as the demeanor of the witness upon the stand, and the way of giving evidence, and weigh his testimony just the same as you would that of any other witness engaged in any other business, and try the case according to the evidence? *A.* I think I could try it according to the evidence without any bias or prejudice.

*By the Court.* *Q.* I will ask you a question. The matter involved in this case is the selling of intoxicating liquor contrary to law. Now, two witnesses are produced who swear directly opposite, and every thing tends to show that their testimony is about equally balanced. Would the fact that one was a saloon-keeper and the other was not, — would that dip the scale in favor of the man who was not the saloon-keeper? *A.* I think, if the evidence was about alike on both sides, I would not be prepared to go on either side. *Q.* I suppose you understand, in criminal

cases, the prisoner is entitled to the benefit of the doubt. Would you give the benefit of all reasonable doubts? *A.* Yes, sir. *Q.* Could you, and would you, presume him innocent until he was proven guilty beyond a reasonable doubt? *A.* Yes, sir. *Q.* You think, then, in a case such as I have suggested to you, the mere fact of the man's business could not balance the scale one way or the other? *A.* Not necessarily. *Q.* It is whether the fact of his business will decide the question. Will the fact of this decide the question one way or the other in your mind? If there were no other facts that go to decide it, would the mere fact of his being a saloon-keeper weigh for or against the evidence? *A.* No, sir.

"*By Defendant's Attorney.* *Q.* Would you take into consideration, in weighing his evidence, as whether you believe him or not? *A.* No, sir; I would not. *Q.* Don't you think it would be a matter of conscience? *A.* I think so. *Q.* I want to inquire, Mr. Beckley, whether, on hearing his testimony and exercising your conscience in this, would you feel obliged to take into consideration the fact that he was in the saloon business? *A.* No, sir; I think not. *Q.* Would you, whether you felt obliged to or not? *A.* I don't think it would have any weight with me, every thing else equal."

The court below was justified from the foregoing examination in disallowing the challenges to these jurymen. In the trial of challenges for cause a large discretion is necessarily confided in the judge, and the same will not be revised on error or appeal unless it appears to have been grossly abused or exercised contrary to law. As this court has no opportunity of observing the demeanor of the jurors who are challenged, it will exercise the power of setting aside the decision of the trial judge with caution.

As to the law, it is our opinion that it has not been violated by the judge in this instance, but that his decision was correct in every particular. It is true that the jurors were both opposed, from principle, to the business of selling liquor. Both believed it to be an immoral business, whether licensed or not. This would hardly disqualify them from serving as jurors in a case of this character. They were intelligent men as disclosed by their ex-

amination. They understood clearly the rights of the accused regarding the burden of proof and the presumption of innocence surrounding him. They both say they could fairly and impartially try the case, and render a verdict unbiased and free from prejudice. The judge believed them. He had an opportunity of critically observing them when testifying, and had probably very good reasons for concluding that they were not disqualified by reason of actual bias.

It has been repeatedly held that prejudice against a particular crime, or against the actual business for which the accused is being tried, will not render the juryman disqualified, provided he is able, for the time being, to lay aside his unfavorable opinion, and give the accused a fair trial according to the evidence. U. S. v. Noelker, 17 Blatchf. 554, 1 Fed. Rep. 426; U. S. v. Borger, 7 id. 193; U. S. v. Duff, 6 id. 45–48. In the famous Anarchists' Case (Spies v. People, 122 Ill. 156, 12 N. E. Rep. 865, and 17 id. 898), it was held that a prejudice against socialists, communists, and anarchists is not of itself a disqualification.

It would seem scarcely possible to be able to get a jury in a county where the local option law is in force to try a defendant under an indictment of this character if the theory of the defendant's counsel be correct. A majority of the public are law-abiding citizens, and as such they must have a natural prejudice against acts of lawlessness, and that prejudice would extend to any person engaged in the business within that county.

3. The fourth assignment of error and the seventh, being identical, will be considered together. It seems to be the theory of counsel for defendant that this " local option law " is one prescribing entirely new and distinct rules and regulations regarding the liquor tariff within the territory. Such a proposition is erroneous. The legislative intent was simply to take from the board of county commissioners the use of a discretion whenever a majority of the electors of a county should so determine at an election legally held under the provisions of such law. That discretion was to license the sale of intoxicating liquors. If a majority of the votes cast should be " against the sale," the county commissioners could not grant license to sell. If the majority was " for the sale," the county commissioners might grant license

or not, as they in their discretion might determine. The law of 1879, relating to license and the penalty for selling without, was all this time in force in Spink county. The adoption of "the local option law" in 1887 in that county did not repeal the law of 1879, so far as it prescribed penalties for selling liquor without a license ; nor did the vote of November, 1888, repeal the law in force in Spink county in 1887–88. Territory v. O'Connor, 5 Dak. 415, 41 N. W. Rep. 746. It was at all times unlawful for any person to sell intoxicating liquor within any county in this territory without having first obtained a license as provided by law.

The indictment in this case recited "the local option law" quite explicitly, and perhaps such recitals were unnecessary, and consequently surplusage. The offense was selling liquor without a license, and it was immaterial upon that question whether or not Spink county had voted for or against the sale, or whether "local option" was in force when the indictment was presented. The penalty for selling liquor without a license remained the same through all changes regarding "local option." No vote affected it. There could be no offense against "the local option law" except on the part of a board of county commissioners, or the common council, or an officer or person presuming to have authority to grant license. § 3, chap. 70, Laws 1887.

4. The fifth assignment of error relates to alleged misconduct on the part of the court below in instructing the jury upon the evidence. The following is the portion excepted to : "The only evidence that you can consider as to whether it was whisky or not is the evidence of Peter Parsons, who claims that he tasted it the day he bought it, and before it left his hands and control."

Section 377, Code Crim. Proc.: "In charging the jury the court must state to them all matters of law which he thinks necessary for their information in giving their verdict, and, if it state the testimony of the case, it must, in addition, inform the jury that they are the exclusive judges of all questions of fact."

Although the learned judge, in his charge, did not literally follow the statute quoted, yet he did so substantially, and no less favorably to the defendant. The prosecution rested its case upon the testimony of the witness, Peter Parsons. No other testimony

was given. The judge thus charged the jury : " It is, however, purely a question of fact for the jury whether, under all the circumstances, they will believe the evidence of Parsons ; and the jury have a right to believe or disbelieve his testimony, as it may seem to them worthy or unworthy of belief."

It is difficult to imagine how language could be framed that would more clearly inform the jury that they were " the exclusive judges of all questions of fact." We think there was no error in the language employed by the court.

5. The sixth assignment is surely untenable. From the record it appears that the witness, Parsons, testified positively that he tasted the liquor in the bottle he got from defendant October 23d, in Watson's shop, and that it was whisky, and he knew it, because he had drank whisky before. There was evidence, then, of the fact. The jury considered it truthful. We cannot say it is false.

This disposes of all the questions raised by the record. There being no error, the judgment of the district court is affirmed. All the justices concur, except CROFOOT, J., not sitting.