## LEWINSOHN v. UNITED STATES. *

(Circuit Court of Appeals, Seventh Circuit. November 29, 1921. Rehearing Denied January 17, 1922.)

No. 2916.

1. **Injunction ⬅219—Defendant must obey order until modified, and cannot assert, as defense that it was improvidently entered.**

Where defendant was served with a restraining order, which was within the jurisdiction of the court, it was his duty to obey it until modified, and he cannot, in defense of a contempt proceeding instituted against him for violating the order, be heard to assert that the court improvidently entered it.

2. **Intoxicating liquors ⬅274—Complaint in injunction suit need not allege criminal conviction.**

In a suit in equity under Volstead Act, tit. 2, §§ 21, 22, 24, for an injunction abating a liquor nuisance, where the complaint described the location of the nuisance with particularity, and fully and fairly set forth the connection of the various defendants therewith, it was unnecessary to allege that one of such defendants had been prosecuted and convicted of a similar criminal offense; it being the purpose of the statute to supply a more prompt, effective, and efficient means of abating nuisances than the institution of criminal actions.

3. **Intoxicating liquors ⬅275—Not necessary in all cases to prove repeated sales, in order to show common nuisance.**

In a suit under Volstead Act, tit. 2, §§ 21, 22, 24, to abate a liquor nuisance, it is not necessary in all cases to prove repeated sales, in order to justify a finding of a common nuisance.

4. **Evidence ⬅483(1)—Witness familiar therewith can testify that beverage was whisky, etc., and give opinion as to alcoholic contents.**

One who has drunk whisky, wine, or beer, and who is familiar with its taste and smell, can give opinion evidence as to whether a beverage sold and drunk was whisky, wine, or beer, and give his opinion as to the presence of an alcoholic content exceeding one-half of 1 per cent.

5. **Intoxicating liquors ⬅275—Presumed that one ordering whisky, and paying the price asked for whisky, received it.**

Where a purchaser of liquor, on entering the place of sale, inquired the price of whisky, put his money on the bar, and asked for whisky, and was given a beverage by defendant, it is presumed that he received what he ordered and paid for.

6. **Intoxicating liquors ⬅279—Service of writ of injunction held to support charge of violating injunctional order.**

Though, in a suit under Volstead Act, tit. 2, §§ 21, 22, 24, to abate a liquor nuisance, it was not proper practice to serve a writ of injunction, instead of the injunctional order, on a defendant, where the writ signed by the clerk contained all the recitals of the order of injunction and the order abating the nuisance, and fully and completely apprised defendant of the contents of the restraining order, he could not, when charged with contempt in violating such order, assert ignorance of its contents.

7. **Constitutional law ⬅312—Intoxicating liquors ⬅259—Provisions of Volstead Act for abatement of nuisance in equity do not deny due process of law.**

Volstead Act, tit. 2, §§ 21, 22, 24, providing for the abatement of liquor nuisances by a suit in equity and the granting of an injunction, do not take property without due process of law, as the jurisdiction of equity to abate nuisances is of ancient date.

8. **Jury ⬥13 (21)—Volstead Act not unconstitutional, because denying jury trial for violation of liquor injunction.**

Volstead Act, § 24, authorizing summary punishment as for contempt for violation of an injunction granted under that title for the purpose of abating nuisances, is not unconstitutional, because denying the right of trial by jury.

9. **Criminal law ⬥162—Provisions for punishment of violation of injunction as contempt do not violate double jeopardy provisions of Constitution.**

Volstead Act, § 24, providing for punishment as for contempt of violations of liquor injunctions thereunder, does not violate the double jeopardy provisions of the Constitution, though the commission of the acts condemned also authorizes criminal prosecutions.

10. **Intoxicating liquors ⬥259—Volstead Act prevails over general statutes or court rules as to time injunction may remain in force.**

The specific provisions of Volstead Act, § 22, relative to temporary and permanent injunctions against liquor nuisances, prevail over any general statute or court rule limiting the time during which a temporary restraining order granted ex parte, may remain in force.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit for injunction by the United States against Ike Lewinsohn. Defendant was adjudged guilty of contempt, and he brings error. Affirmed.

Francis Borrelli, of Chicago, Ill., for plaintiff in error.

C. W. Middlekauff and Jacob I. Grossman, both of Chicago, Ill., for the United States.

Before BAKER, EVANS, and PAGE, Circuit Judges.

EVAN A. EVANS, Circuit Judge. The parties will be named as they appeared below. On November 26, 1920, an injunctional order was entered upon a verified bill of complaint and supporting affidavits providing, among other things, that the defendant and others—

"are hereby restrained individually, or in combination with others, from conducting or permitting the continuance of a public and common nuisance upon the first floor—i. e., the ground floor—of the building at 410 South Wabash avenue, and from removing or in any way interfering with the liquor or fixtures or other things upon said premises used in connection with violation, constituting said nuisance, and that said nuisance be abated, and that this order shall continue in force until revoked or modified by further order of the court in that regard."

Thereafter on December 15, 1920, the government filed its sworn information, charging defendant with a violation of the injunctional order. Upon the trial, which was without a jury, certain government investigators testified to the purchase of whisky and beer from defendant on the premises declared a nuisance by the injunctional order. Defendant offered no evidence, and the court found that the injunctional order hereinbefore quoted in part had been violated, and that the defendant was guilty of contempt, and pronounced a prison sentence, in addition to imposing a fine.

Numerous errors are assigned to support the writ, among them being these: (a) Insufficiency of the evidence to support the original re-

straining order; (b) failure of proof to show such restraining order was ever served upon defendant; (c) insufficiency of evidence to support the order adjudging defendant in contempt; (d) errors in permitting witnesses to testify concerning alcoholic content and character of beverage sold; (e) unconstitutionality of sections 21 and 22 of title 2 of the Volstead Act (41 Stat. 314); (f) failure of the court to limit the first restraining order to 10 days. The various assignments will be discussed at length, because of their bearing upon numerous pending writs of error involving the same or similar questions.

[1] It is first urged, and much reliance placed upon this contention, that the evidence upon which the original order was granted was insufficient to justify its issuance. In assigning this error, counsel overlooked or ignored the distinguishing fact that this writ of error is directed, not to the original restraining order, but to the order punishing defendant for violation thereof. Where defendant has been served with a restraining order, the entering of which was within the jurisdiction of the court, and which order the defendant has violated, he cannot, in defense of a contempt proceeding instituted against him, be heard to assert that the court improvidently entered the original order. In re Coy, 127 U. S. 731, 758, 8 Sup. Ct. 1263, 32 L. Ed. 274; Ex parte Watkins, 3 Pet. 193, 203, 7 L. Ed. 650; Ex parte Tyler, 149 U. S. 164, 170, 13 Sup. Ct. 785, 37 L. Ed. 689; People v. McWeeney, 259 Ill. 161, 170, 102 N. E. 233, Ann. Cas. 1916B, 34, 15 R. C. L. 835, 838. It is his duty, until the restraining order is modified, to respect it and obey its commands.

[2] While this might well dispose of defendant's contentions in respect to the original order, we have, because of its bearing upon other similar cases, considered the evidence and the pleadings, as well as the objections thereto, to ascertain whether the same supports the injunctional order as issued. The criticisms directed to the sufficiency of the complaint are evidently based upon the theory that defendant considers it necessary in these proceedings for the pleader to follow the rules governing the drafting of a criminal indictment, and to aver in addition some fact, such as a statement that the defendant had been previously prosecuted and convicted for making illegal sales of liquor, in order to justify the court in granting equitable relief.

In these criticisms counsel for defendant has utterly failed to appreciate the purpose and scheme of these sections of the Volstead Act. Unquestionably Congress, by these sections (21, 22, and 24), intended to supply a more prompt, effective, and efficient means of abating nuisances than the institution of criminal actions. These sections read:

Sec. 21. Any room, house, building, boat, vehicle, structure, or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of this title, and all intoxicating liquor and property kept and used in maintaining the same, is hereby declared to be a common nuisance, and any person who maintains such a common nuisance shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or be imprisoned for not more than one year, or both. If a person has knowledge or reason to believe that his room, house, building, boat, vehicle, structure, or place is occupied or used for the manufacture or sale of liquor contrary to the provision of this title, and suffers the same to be so occupied or used, such room, house, building, boat, vehicle, structure, or place shall be subject to a lien for and

may be sold to pay all fines and costs assessed against the person guilty of such nuisance for such violation, and any such lien may be enforced by action in any court having jurisdiction.

Sec. 22. An action to enjoin any nuisance defined in this title may be brought in the name of the United States by the Attorney General of the United States or by any United States attorney or any prosecuting attorney of any state or any subdivision thereof or by the commissioner or his deputies or assistants. Such action shall be brought and tried as an action in equity and may be brought in any court having jurisdiction to hear and determine equity cases. If it is made to appear by affidavits or otherwise, to the satisfaction of the court, or judge in vacation, that such nuisance exists, a temporary writ of injunction shall forthwith issue restraining the defendant from conducting or permitting the continuance of such nuisance until the conclusion of the trial. If a temporary injunction is prayed for, the court may issue an order restraining the defendant and all other persons from removing or in any way interfering with the liquor or fixtures, or other things used in connection with the violation of this act constituting such nuisance. No bond shall be required in instituting such proceedings. It shall not be necessary for the court to find the property involved was being unlawfully used as aforesaid at the time of the hearing, but on finding that the material allegations of the petition are true, the court shall order that no liquors shall be manufactured, sold, bartered, or stored in such room, house, building, vehicle, structure, or place, or any part thereof. And upon judgment of the court ordering such nuisance to be abated, the court may order that the room, house, building, structure, boat, vehicle, or place shall not be occupied or used for one year thereafter; but the court may, in its discretion, permit it to be occupied or used if the owner, lessee, tenant, or occupant thereof shall give bond with sufficient surety, to be approved by the court making the order, in the penal and liquidated sum of not less than $500 nor more than $1,000 payable to the United States, and conditioned that intoxicating liquor will not thereafter be manufactured, sold, bartered, kept, or otherwise disposed of therein or thereon, and that he will pay all fines, costs, and damages that may be assessed for any violation of this title upon said property.

Sec. 24. In the case of the violation of any injunction, temporary or permanent, granted pursuant to the provisions of this title, the court, or in vacation a judge thereof, may summarily try and punish the defendant. The proceedings for punishment for contempt shall be commenced by filing with the clerk of the court from which such injunction issued information under oath setting out the alleged facts constituting the violation, whereupon the court or judge shall forthwith cause a warrant to issue under which the defendant shall be arrested. The trial may be had upon affidavits, or either party may demand the production and oral examination of the witnesses. Any person found guilty of contempt under the provisions of this section shall be punished by a fine of not less than $500 nor more than $1,000, or by imprisonment of not less than thirty days nor more than twelve months, or by both fine and imprisonment.

The purpose of the injunctional order in the instant case was to abate a nuisance such as is defined by section 21 of the act. It was not directed primarily at defendant. The injunction as to him was incidental to the main order—the abatement of the nuisance. The pleader followed section 22 as closely as possible. The language of the complaint follows the language of the statute. The location of the nuisance is described with particularity and the connection of the various defendants (owner, tenant, and proprietor of the business conducted thereon) are all fairly and fully set forth. It was unnecessary to allege that the defendant had been prosecuted and convicted of a similar criminal offense in order to invoke the jurisdiction of a court of equity.

Nor can any hard and fast rule be announced to determine whether the building is in fact a common nuisance.

[3] Counsel stresses the necessity of proving repeated sales in order to justify a finding of a common nuisance, citing U. S. v. Cohen (D. C.) 268 Fed. 420. But such a test is neither an accurate nor an exclusive one. The court might well conclude from evidence of a single sale that the room or the building was a common nuisance and that it was a place where liquor was "being manufactured, sold, kept or bartered" in violation of the statute. No doubt repeated sales of the same beverage on other occasions and under other circumstances might justify greater certainty in the trier's mind as to the use to which the building was being put. There could be, however, an almost irrefutable conclusion drawn from a single sale, provided the facts surrounding such sale warranted the inference that it was one of the ordinary and usual incidents of the business there conducted. To illustrate: Assume A., B., and C. as strangers enter a room, having the appearance and equipment of a saloon, and well occupied by customers, and approach the bar and, openly and in such a tone as to be heard by all, ask the price of a drink of whisky, are informed that it is 75 cents a drink, and thereupon pay the money. The whisky is poured out and there drunk, all in plain sight of those present. Could there be any question that such evidence would support a finding that the premises were being used as a common nuisance within the definition of section 21 of the act? In fact, such evidence might be much more persuasive and conclusive than several gifts or sales of liquor made secretly and by one other than the proprietor; also it might be more persuasive than the mere discovery under a search warrant of a considerable quantity of liquor contained in bottles, duly sealed, unaccompanied by any evidence that such liquor had been brought to the premises since the passage of the Volstead Act.

[4] Criticism is also made of the character of the evidence received in support of the original bill and in support of the application to punish the defendant for violation of the restraining order; the defendant's contention being that witnesses were permitted to testify to the character and alcoholic content of the beverage sold over the bar on the various occasions described. So far as whisky or wine is concerned, this court disposed of this question in the case of Sabutis v. U. S., 270 Fed. 209. But counsel contends that this decision was modified by this court in Berry v. U. S., 275 Fed. 680. When carefully read, there is no conflict between these two cases. In the Berry Case it was not even ordinary beer that was under consideration, and the witness in no way attempted to qualify himself. In the Sabutis Case the beverages sold were whisky and wine, and moreover, the witnesses qualified themselves as to their acquaintance with and use of whisky and wine.

No extraordinary or unusual rule of evidence or exception to any rule is presented for our consideration in disposing of this assignment of error. Before one can give opinion evidence he must show his qualifications. One who has drunk whisky, who is familiar with its taste and smell, can give opinion evidence as to whether the beverage sold

and drunk was whisky. If it appears that whisky has been sold, it would require no stretch of the law of judicial notice to conclude that whisky contains more than one-half of 1 per cent. of alcohol. However, such witness, thus qualified, could unquestionably give his opinion as to the presence of an alcoholic content exceeding one-half of 1 per cent. 23 Cyc. 265; Merkle v. State, 37 Ala. 139, 141; Pennacchio v. U. S. (C. C. A.) 263 Fed. 66, 67; Shaneyfelt v. State, 8 Ala. App. 370, 373, 62 South. 331; People v. Mueller, 168 Cal. 526, 143 Pac. 750; Terr v. Pratt, 6 Dak. 483, 494, 43 N. W. 711; State v. Miller, 53 Iowa, 84, 88, 4 N. W. 838; Comm. v. Owens, 114 Mass. 252, 253; Comm. v. Dowdican, 114 Mass. 257, 258; Burrell v. State, 25 Neb. 581, 41 N. W. 399; Feddern v. State, 79 Neb. 651, 655, 113 N. W. 127; Ruppert v. Caffey, 251 U. S. 264, 40 Sup. Ct. 141, 64 L. Ed. 260; Purity Extract Co. v. Lynch, 226 U. S. 192, 33 Sup. Ct. 44, 57 L. Ed. 184. A recent decision in support of this conclusion is Rose v. U. S., 274 Fed. 245, decided by the Circuit Court of Appeals for the Sixth Circuit July 19, 1921.

The same reasoning applies with almost equal force to wine. As to beer, undoubtedly the court should be more careful; but with a proper showing of qualification we see no reason why the witness should not give his opinion that the beverage sold and drunk was or was not beer.

[5] But in the present case there was more than the testimony of the witnesses who stated that the beverage sold was whisky and beer and contained more than one-half of 1 per cent. of alcohol. The purchaser, upon entering the place, inquired about the price of the whisky, put his money on the bar, and asked for whisky. Defendant poured out some beverage and gave it to the customer. Presumably the purchaser received what he ordered and paid for. 23 Cyc. 265; State v. Cloughly, 73 Iowa, 626, 35 N. W. 652; Burrell v. State, 25 Neb. 590, 41 N. W. 399; State v. Marks, 65 N. J. Law, 87, 46 Atl. 757.

Moreover, we think there is a vast difference between the question propounded to the witnesses who gave the opinion attacked and the questions which defendant's counsel now argue are not the legitimate subjects of expert opinion. For a witness to give it as his opinion that a certain beverage contains alcohol is one thing. To attempt to give the exact alcoholic content is quite another matter. Users of whisky might not be able to tell within 20 per cent. the alcoholic content of such a drink, and yet could safely and truthfully say it contained far more than one-half of 1 per cent. And the same may apply to the alcoholic content of beer. The difference in its effect as well as its taste might, we think, well make the presence of more than one-half of 1 per cent. of alcoholic content a subject for illumination by opinion evidence. Like all other evidence, its admissibility cannot be determined by its weight. The cross-examination might greatly weaken its persuasiveness; but we are here dealing only with the question of its admissibility.

[6] Referring to the error dealing with the service of the injunctional order, it appears that the pleader in all of these cases confused his knowledge of the common law with the practice under the Code.

Instead of serving the injunctional order, he served what might be called a writ of injunction. This writ, signed by the clerk, contained all the recitals of the injunctional order and the order abating the nuisance, and fully and completely apprised the defendant of the contents of the restraining order. Defendant knew that the premises occupied by him had been condemned as a nuisance, and that he was restrained from selling liquor thereon in the manner and to the extent shown by the part of the order heretofore quoted.

It might be added that the question is not squarely raised on this writ of error, because the record here warrants the finding that, in addition to serving this writ of injunction, the restraining order was also served upon defendant. We make reference to the practice, because of the presence of the same question in other cases, and hold (without approving the practice) that defendant, being fully informed of the contents of the injunctional order by service of this writ, and also having heard the pronouncement of the judge in open court, cannot assert ignorance of the contents of the order he is charged with having violated.

The constitutionality of these three sections, 21, 22, and 24, is attacked on the ground that they violate (a) the due process clause; (b) the provision for trial by jury; and (c) the double jeopardy provisions of the Constitution. While conceding that the question of the constitutionality of the Volstead Act generally is now closed (National Prohibition Cases, 253 U. S. 350, 40 Sup. Ct. 486, 588, 64 L. Ed. 946), and that the provision defining intoxicating liquors is constitutional (Ruppert v. Caffey, 251 U. S. 264, 40 Sup. Ct. 141, 64 L. Ed. 260), defendant relies upon the language of Justice McReynolds in the first-cited case, where he stated:

"It is impossible * * * to say with fair certainty what construction should be given to the Eighteenth Amendment. Because of the bewilderment which it creates, a multitude of questions will inevitably arise and demand solution here. In the circumstances I prefer to remain free to consider these questions when they arrive."

Subsequently, in Street v. Lincoln Safe Deposit Co., 254 U. S. 88, 41 Sup. Ct. 31, 65 L. Ed. 151, 10 A. L. R. 1548, the court seems to have given added finality to its determination that the Volstead Act is constitutional. Section 33 of the act alone was there construed, however, and we have approached this question upon the assumption that the sections under consideration were not included in any of the Supreme Court decisions referred to, and, as to them, the question is open.

[7] The attack upon these sections, based upon the ground that property was being taken without due process of law, must fail, we think, because of the decision of Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205, where the court said:

"Equally untenable is the proposition that proceedings in equity for the purposes indicated in the thirteenth section of the statute are inconsistent with due process of law. 'In regard to public nuisances,' Mr. Justice Story says, 'the jurisdiction of equity seems to be of a very ancient date, and has been distinctly traced back to the reign of Queen Elizabeth. The jurisdiction is applicable not only to public nuisances, strictly so called, but also to purprestures upon public rights and property. * * * In case of public nui-

sances, properly so called, an indictment lies to abate them, and to punish the offenders. But an information, also, lies in equity to redress the grievance by way of injunction.' 2 Story's Equity, §§ 921, 922. The ground of this jurisdiction in cases of purpresture, as well as of public nuisances, is the ability of courts of equity to give a more speedy, effectual, and permanent remedy than can be had at law. They cannot only prevent nuisances that are threatened, and before irreparable mischief ensues, but arrest or abate those in progress, and, by perpetual injunction, protect the public against them in the future; whereas, courts of law can only reach existing nuisances, leaving future acts to be the subject of new prosecutions or proceedings. This is a salutary jurisdiction, especially where a nuisance affects the health, morals, or safety of the community. Though not frequently exercised, the power undoubtedly exists in courts of equity thus to protect the public against injury."

[8] The objection that defendant is deprived of right of trial by jury, and that, therefore, these sections are unconstitutional, possesses, we think, less merit. This question is also closed by at least two decisions of the Supreme Court. Eilenbecker v. Plymouth County, 134 U. S. 31, 10 Sup. Ct. 424, 33 L. Ed. 801, and In re Chapman, 166 U. S. 661, 17 Sup. Ct. 677, 41 L. Ed. 1154. In the former case cited we find this language:

"The contention of these parties is that they were entitled to a trial by jury on the question as to whether they were guilty or not guilty of the contempt charged upon them, and because they did not have this trial by jury they say that they were deprived of their liberty without due process of law within the meaning of the Fourteenth Amendment of the Constitution of the United States."

"If it has ever been understood that proceedings according to the common law for contempt of court have been subject to the right of trial by jury, we have been unable to find any instance of it. It has always been one of the attributes—one of the powers necessarily incident to a court of justice—that it should have this power of vindicating its dignity, of enforcing its orders, of protecting itself from insult, without the necessity of calling upon a jury to assist it in the exercise of this power."

[9] Equally conclusive are the decisions of the court supporting the power of the court to punish for contempt notwithstanding there are statutes authorizing criminal prosecutions for the commission of the acts condemned. In re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092; In re Chapman, supra; Stead v. Fortner, 255 Ill. 468, 99 N. E. 680; Mobile v. Louisville & Nashville Railroad Co., 84 Ala. 115, 4 South. 106, 5 Am. St. Rep. 342. In the case of In re Debs the court said:

"The law is full of instances in which the same act may give rise to a civil action and a criminal prosecution. An assault with intent to kill may be punished criminally, under an indictment therefor, or will support a civil action for damages, and the same is true of all other offenses which cause injury to person or property. In such cases the jurisdiction of the civil court is invoked, not to enforce the criminal law and punish the wrongdoer, but to compensate the injured party for the damages which he or his property has suffered and it is no defense to the civil action that the same act by the defendant exposes him also to indictment and punishment in a court of criminal jurisdiction. So here the acts of the defendant may or may not have been violations of the criminal law. If they were, that matter is for inquiry in other proceedings."

[10] The contention that the temporary injunctional order expired in 10 days from its entry, because granted ex parte, is without merit.

Neither a court rule nor a general statute can overthrow the specific provisions of section 22 of this act. The rule of construction, "Generalia specialibus non derogant," applies, and the specific provision of the Volstead Act must prevail over any general enactment referring to the period of time during which a temporary restraining order granted ex parte may remain in force.

The judgment is affirmed.