FRED F. KANERT v. STATE OF NEBRASKA.

FILED SEPTEMBER 28, 1912. No. 17,453.

1. **Rape:** EVIDENCE. A conviction for rape cannot be sustained upon the uncorroborated testimony of the complainant.

2. ———: CORROBORATIVE EVIDENCE. The testimony of the complainant as to the commission of the crime by the defendant may be corroborated by evidence of facts and circumstances showing a disposition on his part to commit the crime and an opportunity to do so.

3. ———: WEIGHT OF EVIDENCE: QUESTION FOR JURY. If the crime

Kanert v. State.

itself is established beyond question, and there are inconsistencies in the evidence of the defendant, as to material matters, from which it may reasonably be inferred that the testimony of the complaining witness implicating the defendant is substantially correct, it presents a case for the jury, under suitable instructions.

4. ———: INSTRUCTIONS: CORROBORATIVE EVIDENCE. It is the testimony of the prosecuting witness as to the guilt of the defendant that must be corroborated. When there is evidence tending to prove several distinct crimes, and the prosecution has elected upon which to proceed, a request to instruct the jury that defendant must be acquitted, "unless you find from the evidence, beyond a reasonable doubt, that the defendant committed the act so elected, and as to this act you cannot find the defendant guilty on the evidence of Mary Waddick alone, as to the act she must be corroborated by testimony other than her own," was properly refused, for, although this language might be considered a correct technical statement, still, in the connection asked, the language might probably be misleading to the jury.

5. Criminal Law: INSTRUCTIONS: DISTINCT CRIMES: ELECTION. When upon the trial there is evidence tending to prove several distinct crimes, and the prosecution has been required to elect upon which it will proceed, the court should so instruct the jury in the submission of the case. It is erroneous under such circumstances to instruct the jury: "You are instructed that if you should find from the evidence, beyond a reasonable doubt, that an act of sexual intercourse did take place between the defendant and said Mary Waddick, and that at the time of said intercourse the said Mary Waddick was under the age of 15 years, then you should find the defendant guilty as charged in the indictment."

6. Rape: WITNESSES: EVIDENCE: ADMISSIBILITY. In a prosecution for rape of a female child under 15 years of age, it is not a defense that others have also abused the child in the same manner; but when the fact that the prosecuting witness has given birth to a child is relied upon by the state as evidence, and in her testimony she has denied having had intercourse with any one other than the defendant, she may properly be cross-examined as to circumstances tending to show that another than the defendant is the father of her child.

7. Criminal Law: TRIAL: IMPROPER ARGUMENT. Arguments and insinuations to the jury, not based upon competent evidence, are improper, and, although not so wilful and prejudicial as to require a reversal of the judgment, are indicated in the opinion to be avoided at a future trial.

8. **Rape: Sentence.** The crime of rape upon a child under the age of consent is a serious one, and we cannot say that, if the defendant is guilty as charged, a sentence of seven years' imprisonment in the penitentiary is beyond the reasonable discretion of the trial court.

Error to the district court for Hall county: James N. Paul, Judge. *Reversed.*

*Harrison & Prince,* for plaintiff in error.

*Grant G. Martin, Attorney General,* and *Frank E. Edgerton,* contra.

Sedgwick, J.

The defendant, who is plaintiff in error here, was convicted in the district court for Hall county of the crime of statutory rape upon one Mary Waddick, then under 15 years of age. He alleges that the complaining witness is wholly uncorroborated; that the evidence is entirely insufficient to support the conviction; that by various erroneous rulings of the trial court he was prevented from having a fair trial; and that the prosecuting attorney was guilty of misconduct which tended to prejudice the jury against him. When the first complaint was filed against the defendant, it was charged that the crime was committed on the first day of May, 1911. In a second complaint it was alleged that it was committed on the first day of April, and in the indictment afterwards found by the grand jury it was charged that the crime was committed on the first day of May. This indictment was returned on the 15th day of November, 1911. The complaining witness gave birth to a fully developed child on the 24th day of November, 1911. The complaining witness testified that she went into defendant's store in the evening and asked to see a pair of roller skates; that the defendant, who was alone in the store at the time, showed her a pair of skates, and told her that the price was $3.50; that she told him she couldn't buy them for she hadn't the money,

and that he then offered to give her the skates if she would sometimes run errands and otherwise accommodate him. She knew what he meant and at first refused, but afterwards consented. Thereupon the crime was committed in the back room of the defendant's store while she was sitting on the back part of an automobile. It was repeated in about a week later. She was a witness in the preliminary examination before the justice of the peace, and testified that this crime was first committed in the latter part of March and while she was sitting upon a sewing machine. The defendant was in Illinois from the 10th to the 25th of March. There was no sewing machine in his back room, but it appears that there was a dismantled automobile there during the month of March. It was shown by the evidence of experts that the average period of gestation is about 280 days, varying considerably, but seldom less than 260 days. If the first statement of the time of the crime was correct, it would allow about 240 days for this period. The evidence of other witnesses established the fact that, if this crime was committed by the defendant, it must have been in the first part of March, and, if so, the period of gestation was about 265 days. It does not appear that this girl had any satisfactory means of fixing in her own mind the precise time of the commission of the crime, and the discrepancies in her testimony in that regard are perhaps of little importance, except as showing that she was ready to swear positively to matters of which she had but little knowledge.

1. The principal question as to the sufficiency of the evidence to support the conviction depends upon the corroboration of her testimony. It has been uniformly held that in such prosecutions a conviction cannot be sustained upon the wholly unsupported testimony of the complaining witness. It was shown by a clerk of the defendant that early one morning in the fore part of March the prosecuting witness brought a pair of roller skates to the store, and that he was told by the defendant to oil them for her, which he did. There was, however, no dis-

pute in the evidence that she obtained a pair of skates
from the defendant, and this circumstance merely cor-
roborates that fact.    It was also shown that the girl was
several times at the store, but this was not denied by the
defendant.   He admits seeing her there at times, and
admits that she obtained the skates from him.

The defendant was a witness in his own behalf, and
denied emphatically and positively ever having had inter-
course with her or having taken any liberties with the
complaining witness.   He testified that, when she said
that she could not buy a pair of skates at $3.50, he showed
her a pair that had been hanging in the show window and
offered to sell them to her for $2; that she said she did
not have that much money, but had some, and that she
was working and would pay 75 cents on the skates and
the remainder in a week or two.   He agreed to that, and
told her to get her 75 cents.   This was in the afternoon,
and a couple of hours later, in the evening, she returned,
paid her 75 cents and took the skates.   She brought them
in the next morning and had them oiled, as the other wit-
ness testified.   If the evidence of the complaining witness
was corroborated, it is, so far as we can see, in the cross-
examination of the defendant himself.   He testified that
the skates were procured from him on the 25th of March,
after he returned from Illinois, and to substantiate this
testimony he offered in evidence a slip of paper on which
was written the name of the complaining witness, the
charge of $2 for the skates, and the credit of 75 cents,
showing a balance due of $1.25, and bearing the date of
March 25, 1911.   This memorandum he testified was made
at the time, or soon after the transaction.   He was not
certain whether he or his clerk made it.   If he falsely
dated this memorandum for the purpose of deceiving the
jury, it might discredit his testimony in other particulars.
He also testified to selling the complaining witness a
bicycle soon after the sale of the skates.   He produced in
evidence two sheets of paper, which he said were taken
from his account book, upon which appeared an entry of

the sale of the bicycle for $5, on the 16th day of June.  In this transaction he said the girl's employer was in the store with her and paid the money for her.  Afterwards the bicycle was returned as unsatisfactory, and the defendant returned $4 of the money, one dollar apparently being retained for injury to, or use of, the wheel.  During all of this time the $1.25 balance for the skates had been unpaid, and was still unpaid at the time of the trial.  The defendant forgot, as he says, that circumstance when he returned the $4.  Other circumstances disclosed in the cross-examination tend to show that he received no money for the skates and never expected any.  In this respect the girl's story is corroborated.  If he gave the skates to the girl and has failed to explain satisfactorily any motive for so doing, the jury might perhaps be justified in considering that the explanation of the complaining witness was more credible.  There are other inconsistencies in the evidence of the defendant, and the whole matter must be determined by a jury.  We cannot see that the court should have taken this case from them.

2. The complaining witness testified to a repetition of the crime on several different occasions.  When this evidence was received the defendant's counsel asked the court to then instruct the jury that, "by the introduction of plaintiff's evidence, the state has elected to ask for a conviction upon the first act of intercourse alleged to have occurred about March 1st, or March 5th, or 6th, 1911, to wit, the first act of intercourse testified to by Mary Waddick," and the court answered that the question will stand open until the evidence is received.  This ruling was objected to, but we think it was in the line of universal practice and was not objectionable.  The defendant then asked the court "to at this time require the state to elect upon which of the alleged offenses he will ask for a conviction in this case as shown by the testimony."  This request was also overruled.  When the witness was excused from the witness-stand the defendant again moved the court to instruct the jury "that the state, by the introduction of its

evidence, has elected to ask for a conviction upon the first
offense testified to by Mary Waddick." To this it appears
that no objection was made, and there was no ruling
thereon. When the evidence of the state was all in, the
defendant made the following motion: "The defendant
now asks that the state be required to elect on what al-
leged act of intercourse it will ask for a conviction, fixing
the date of the same." The court sustained the motion in
the following order: "Motion sustained, and the prosecut-
ing attorney is now required to fix the time of the alleged
offense on which he asks for a conviction in this case."
The prosecuting attorney elected to ask for a conviction
"on the first act of intercourse proven, to wit, on or about
the 7th day of March."

The defendant duly requested the following instruction:
"You are instructed that the prosecutor has elected the act
which he claims to have taken place on or about the 7th
day of March, A. D. 1911, as the one upon which he will
depend for a conviction of the defendant, and you are
further instructed that in your consideration of this case
your verdict will be for the defendant, unless you find from
the evidence, beyond a reasonable doubt, that the defend-
ant committed the act so elected, and as to this act you
cannot find the defendant guilty on the evidence of Mary
Waddick alone, as to the act she must be corroborated by
testimony other than her own." This instruction was re-
fused by the court, and the defendant excepted. The eigh-
teenth instruction given by the court on its own motion
was as follows: "You are instructed that if you should
find from the evidence, beyond a reasonable doubt, that
an act of sexual intercourse did take place between the
defendant and said Mary Waddick, and that at the time
of said intercourse the said Mary Waddick was under the
age of 15 years, then you should find the defendant guilty
as charged in the indictment"—and the defendant ex-
cepted.

No other instruction was given to the jury by the court
as to the election made by the prosecution. The order of

the court made at the close of the evidence requiring the prosecution to elect upon which crime, testified to by the complaining witness, it would rely for a conviction, was correct.  The defendant was entitled to this protection. It is true that the time of the commission of the offense is immaterial, providing it is within the statute of limitations, but a defendant cannot be tried and convicted of more than one crime in the same trial, and, when several distinct crimes are testified to and circumstances surrounding each crime are in evidence so as to identify the several distinct offenses, the state is required to designate the crime for which it will ask a conviction.  The attorney general admits that the order requiring the state to elect was proper and necessary in this case, but insists that those orders made by the court in the presence of the jury were sufficient, and that a formal instruction to the jury upon this point in submitting the case was unnecessary. No authorities are cited supporting this suggestion, and we are not aware of any.  The jury may or may not heed the orders given to the prosecuting attorney in the progress of the trial.  At the close of the evidence they were instructed by the court as to the matters to be determined by them and as to the law governing those matters.  Erroneous rulings of law made at the trial are frequently corrected by the instructions, and the jury should be governed as to the law of the case by the instructions alone.

The instruction asked by the defendant was properly refused.  That the prosecuting witness must be corroborated as to the particular act of which the defendant is found guilty may in one sense be technically correct, but, in the connection proposed to be given to the jury, might and probably would be misleading.  The request, however, was a suggestion to the court of the necessity of an instruction upon this point, and the eighteenth instruction given by the court amounts to a direct refusal to so instruct, and would, if taken literally by the jury, be inconsistent with a proper instruction.  We think, therefore,

the eighteenth instruction, under the conditions in this case, was prejudicially erroneous.

3. The complaining witness admitted that she had, sometime before the commission of this alleged offense, frequently after night been in the rooms of one Snyder, and that he had taken undue liberties with her; that the matter had become somewhat notorious and her brother had interfered to prevent her visiting Snyder's room. She was then asked if Snyder had ever had intercourse with her; to which she objected, and the objection was sustained on the ground that the evidence was incompetent and immaterial. She was under the age of consent, and if the defendant had had intercourse with her, as she testified, it was immaterial whether others had. In this case, however, it was in evidence that she had given birth to a child. The crime therefore had been committed, and the question was, who was guilty. She had already testified that no one but the defendant had ever so used her. If that testimony was true, it was important evidence in the case; in fact, conclusive against the defendant, and the defendant should have been allowed to cross-examine her in that regard.

4. After the prosecuting witness had testified that the defendant and no one else was guilty of the crime, she was asked by her attorney: "Did you ever tell your folks anything about this?" She answered: "No, sir." She was then asked: "Well, you did later on, didn't you?" and. again, "What do you mean by that answer?" and she replied: "I didn't until about the middle of September." She was then asked: "And then to whom did you tell it?" This was objected to as an improper question. The objection was overruled, and she said: "I told it to my brother." She further testified that, when her condition became known, her mother and brother several times asked as to who was to blame, and that she finally told her brother and then her mother that it was this defendant. The prosecuting attorney in his address to the jury stated: "The parents of the little girl had to tease to get her to tell

who this man was." This was objected to, and it is now insisted that it constituted misconduct on the part of the prosecuting attorney. What she told her mother and brother several months after the transaction as to the guilt of the defendant was of course incompetent.

Again, it appears that the defendant's wife had died in Illinois and was buried on the 25th of September. In cross-examination the prosecuting attorney asked the defendant: "Have you ever been in Illinois since last March?" This was objected to, but the question was allowed, and he answered that he had not. This immaterial evidence was also made the basis of a remark to the jury in the argument of the prosecuting attorney, in which he attempted to infer that one who would not be present at his wife's funeral would be more likely to commit a crime such as that with which the defendant was charged. Without further discussion of this unpleasant matter, we take it for granted that this course of questioning and argument will not be repeated.

5. It is insisted that the sentence, seven years in the penitentiary, was excessive. The crime charged is a serious one. If the defendant is guilty, we cannot see that the court has abused its discretion in fixing the punishment.

For the errors indicated, the judgment of the district court is reversed and the cause remanded.

REVERSED.

ROSE, J., dissenting.

I do not think the rulings held to be erroneous influenced the jury in arriving at their verdict, nor that defendant was prejudiced thereby. In my judgment, the conviction should not be reversed for any reason stated in the opinion. I do not put upon the conduct of the county attorney the interpretation suggested in the opinion, and I think that the prosecution as a whole should be commended by an affirmance.