Johnson v. State.

HELEN C. JOHNSON. V. STATE OF NEBRASKA.

FILED JANUARY 15, 1924.   NO. 23479.

1.   Criminal Law: MISDEMEANORS:  TRIAL.  Persons jointly charged with the commission of a misdemeanor, as distinguished from a

felony, may be tried together in the same trial, in the discretion of the district court and upon its order.

2. ———: ———: COMPLAINT: TECHNICAL ERRORS. Errors in a misdemeanor complaint which are merely technical, but do not result in any disadvantage to the accused and do not lead to any miscarriage of justice, will be disregarded upon review in this court.

3. ———: INTOXICATING LIQUORS: PROOF. The existence of liquor and its intoxicating quality may be proved beyond reasonable doubt, though not seen, through sense of smell by experts, coupled with further circumstantial evidence and an admission on the part of the accused respecting bottles said to have contained such liquor, that said bottles had been broken because she did not know what was in them and did not want to take any chances.

ERROR to the district court for Adams county: WILLIAM A. DILWORTH, JUDGE. *Affirmed as modified.*

*J. E. Willits,* for plaintiff in error.

*O. S. Spillman,* Attorney General, *Richard F. Stout* and *Herbert W. Baird,* contra.

Heard before ⁻ ORRISSEY, C. J., ROSE and GOOD, JJ., REDICK and SHEPHERD, District Judges.

SHEPHERD, District Judge.

The plaintiff in error, Helen C. Johnson, and her husband were charged in a first count with having and keeping intoxicating liquor for beverage purposes, and in a second count with having and keeping intoxicating liquor for sale. The husband was found not guilty of either charge, but the jury convicted the plaintiff in error on the first count, that is to say, on the count charging her with having and keeping such liquor for beverage purposes.

The evidence of the state was to the effect that the deputy sheriff, the chief of police and a patrolman went to the house of the plaintiff in error with a search warrant to look for liquor; that, meeting them at the kitchen door, she at first refused to let them in, telling them that she was giving the children a bath and that they would have to wait a minute;

that thereupon she hurried back into the kitchen, and a crash of breaking bottles sounded so loudly as to be plainly audible both at the back and front of the house; that immediately afterward she told them that they could come in and search all they wanted to; that upon entering they found her standing at the sink with her hand bleeding from broken glass, the room redolent with the fumes of alcohol, and the sink and broken bottles in it smelling strongly of intoxicating liquor. The patrolman, who had slipped around to the front during the parley in the rear, testified that he found the front door locked, and that, peering through a window and under its curtains, he saw the plaintiff in error snatch something from what he took to be a kitchen cabinet, and then heard the crash of breaking glass. He further testified that two unbroken bottles were found in the kitchen, which smelled of alcohol. The chief of police and the deputy sheriff testified that they had conducted many raids for the discovery of intoxicating liquor and were acquainted with the odor of such liquor, and one or both of them said that the contents of said broken bottles smelled like intoxicating liquor or hootch—the home-made stuff. They concluded that such was the case.

On defense the plaintiff in error swore that she was dressing a child after having bathed it, when the knock of the officers came at the back door; that she told them to wait till the babies were dressed—" told him just a minute and I would let him in the front door;" that she started to go to the front door, and as she passed through the kitchen to get there she accidentally hit a drain-board upon which a couple of bottles were standing and knocked them into the sink; that there was nothing in the bottles, and no intoxicating liquor in the house; that she leaned down to pick up glass from the floor and cut her finger; that the broken bottles had possibly been used to carry coffee for lunches; that (in substance) she could not tell where the two unbroken bottles came from or what they were used for; that there were no alcohol fumes from the sink or in the house; and that she had never been arrested before in connection with

any liquor charges. It is to be noticed, however, that on cross-examination she told a somewhat different story of her movements after the coming of the officers, saying that she was returning to the bathroom when she jarred the bottles into the sink, rather than going to the front room to let the officers in by the front door.

A Mrs. Mason was there at the time, and testified that she had seen no liquor there, and had smelt no alcohol or anything of the kind. The husband of the accused said that the chief of police told him upon leaving the house that he had found no booze. On rebuttal the chief testified that plaintiff in error told him that the bottles were broken because she did not know what was in them and did not want to take any chances.

We see no reason why those who are familiar with intoxicating liquor may not identify hootch or home-made whiskey, under circumstances like those which obtain in this case, by smelling it. Nor do we see why such identification, in connection with the other significant facts testified to, should be insufficient to justify the jury in finding that the broken bottles contained intoxicating liquor. It was established in *Burrell v. State,* 25 Neb. 581, that no chemical analysis is necessary to entitle one who is ordinarily well qualified to judge of the character of alcoholic liquor, and who has the opportunity to observe the same, to testify as to its nature and intoxicating quality. Whiskey, whether home-made or otherwise, is an intoxicating liquor, and is so defined by section 3237, Comp. St. 1922. The full text of the section is as follows:

"The words 'intoxicating liquor' or 'intoxicating liquors' as used in this act, shall be construed to embrace all malt, fermented, vinous or spirituous liquors, wine, porter, beer, ale or any intoxicating drink, mixture or preparations of like nature, and all malt or brewed drinks, and all mixtures or preparations, whether patented or not, which will produce intoxication, and, in addition thereto, such liquors of a different character and not hereinbefore enumerated capable of use as a beverage containing over one-half of one

per centum of alcohol.   Natural persons, unincorporated associations of persons, partnerships and corporations shall be deemed persons.   All forms of the pronoun he shall be held to stand for persons as herein defined irrespective of gender.

" The term ' private dwelling-house ' shall mean a separate dwelling with a separate door for ingress and egress exclusive of outbuildings, and used exclusively as a private residence and not connected by doors or otherwise with any place of business except doctors,' dentists' and veterinary surgeons' offices and not connected with any factory, shop, warehouse, club, or other place or building.   The term shall include a room or a suite of rooms actually used as a residence in an apartment house or block separated by walls fron all other rooms in such building and without any door or other opening whereby a communication may be had with other rooms except doors entering into the main hallway."

By section 3247 of said statutes it is to be presumed that plaintiff in error had such liquor in her possession in violation of law.   This presumption was entertained and held sufficient to sustain a conviction in *Yeoman v. State*, 81 Neb. 244, and in *Steinkuhler v. State,* 77 Neb. 331.   The same cases hold that the possession of liquor in the dwelling of the accused raises a presumption of illegal intent.   We therefore conclude that there was enough in the record to take the case to the jury, and to sustain the verdict returned.

The election required and made in the case of *Kanert v. State*, 92 Neb. 14, and the rule announced there furnish no guide in the case at bar.   Because of the different facts in that case it is not applicable.   There is no merit in defendant's contention that an election was made in this case to prosecute the defendant upon a different charge than that upon which she was found guilty.   Similarly we hold that defendant's assignment that the first count of the complaint was fatally defective is without merit.   It is true that the word " his " is used in a place where only " her " or " their " could possibly have been meant.   No misconception on the part of the jury and no miscarriage of justice occurred by

reason of the error, and it would be making too much of refinement and too little of common sense to regard it as reversible error. Section 10186, Comp. St. 1922, fits this case, and is as follows: " No judgment shall be set aside * * * for error as to any matter of pleading or procedure, if the supreme court, after an examination of the entire cause, shall consider that no substantial miscarriage of justice has actually occurred."

There was no error in the court's refusal to give the plaintiff in error and her husband separate trials. The provis.un upon which she relies applies only to trials for felonies, while the offense charged against her was a misdemeanor. Neither was there error on the part of the trial court in its instruction in which it said that the plea of not guilty casts upon the state the burden of proving all of the material allegations of the charge beyond a reasonable doubt. The argument is that this is tantamount to an instruction that the burden of proof shifts. It is, in fact, as we view it, tantamount to an instruction that the law presumes the innocence of the defendant and places the burden of proving his guilt upon the state from the very beginning of the case. The objection is super-critical.

We have no hesitation in saying that it was improper for the court to permit the county attorney to ask the officer whether he had ever been called upon to search the residence before, and whether he had ever received complaints regarding the residence of Mr. and Mrs. Johnson. But the defendant is not in a position to avail herself of it. Her own attorney, inquiring in that behalf, elicited from her testimony to the effect that she had never before been arrested upon a liquor charge. And, besides this, we do not think that the error could have misled the jury. On the contrary, we are convinced that no miscarriage of justice occurred and that the verdict of the jury was right.

The court gave a proper instruction in regard to the testimony of police officers and detectives, and there was no error in refusing to give instruction No. 1 requested by the defendant upon that point. The instruction in regard to

reasonable doubt (No. 7) is not approved, but it is not reversibly prejudicial. It is as follows.

"You are instructed that the defendant is presumed to be innocent until he has by sufficient proof been proved to be guilty, and it is the duty of the jury to give to the defendant the full benefit of this presumption and acquit him, unless the jury, from the evidence, believe that he has been proved guilty in manner and form as charged in the complaint beyond a reasonable doubt. A reasonable doubt is what the words imply—a doubt founded in reason; a doubt growing out of the evidence or want of evidence in the case; not a mere possibility of the defendant's innocence."

The jury were not called upon to justify the acquittal of the defendant, if it had seen fit to acquit her, as counsel complains. And since the instruction in its first sentence advises the jury that  the state must produce sufficient proof to convict, and that they must indulge the presumption of defendant's innocence and acquit her unless such proof has been made, we do not believe that the jury could have been misled by the after part of the same. No miscarriage of justice resulted from the latter part of the instruction and the judgment will not be reversed because of it. Comp. St. 1922, sec. 10186. Th einstruction may also stand under *Goemann v. State* 94 Neb. 583, in which the late Justice Sedgwick said:

"The instruction of the court defining a reasonable doubt is complained of. In that instruction the court said that a reasonable doubt 'is an actual, substantial doubt arising either from the evidence or want of evidence in the case.' The instruction is quite comprehensive, and, when considered as a whole, we do not think the language complained of was misleading."

Both the plaintiff in error and her husband were prosecuted in the same case, and, of course, a portion of the costs of that case must be regarded as made by reason of the additional party. Some costs were made in the docketing and journalizing and serving of process incident to trying the husband of the plaintiff in error in the case in which she

was convicted. It cannot be said, therefore, that all of the costs incurred were necessary in the prosecution of the plaintiff in error. But by the sentence pronounced upon her she is required to pay the entire bill of costs. We think that her complaint in this particular is well founded and that she is entitled to relief. This can properly be afforded by a reduction of the sentence in this court, and we believe and hold that she should be required to pay only one-half of the costs of the prosecution and that the sentence should be reduced accordingly. No further error is to be found in the record, so far as we are able to determine by a careful investigation of the same, and, as modified, the judgment of the lower court will be affirmed.

AFFIRMED AS MODIFIED.