## UNITED STATES v. COHEN.

(District Court, E. D. Missouri, E. D.　October 28, 1920.)

No. 5454.

1. **Nuisances** ☜1—**Common-law definition.**

　At common law a "nuisance" is a wrong arising from an unreasonable or unlawful use of property, to the discomfort, annoyance, inconvenience, or damage of another, and, even if the definition does not always specify the element of continuous or recurrent acts, it includes that element.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Nuisance.]

2. **Constitutional law** ☜253—**Eminent domain** ☜2 (1)—**Statute cannot declare a nuisance that which is obviously not one, and thus deny due process of law or take property without just compensation.**

A statute cannot declare a thing a nuisance which is obviously not a nuisance, the abatement of which as a nuisance would violate the constitutional guaranty of due process of law and just compensation for private property taken for public use.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Constitutional law ☞81—Broad police power is modified by rights of individuals.**

As a general rule, the valid exercise of the police power includes all things essential to the conservation of the public safety, public health, and public morals; but that rule is modified, in consideration of the rights of the private individual, to the protection of the public generally, as distinguished from that of a particular class, and to the use of means reasonably necessary to accomplish the purpose, and not unduly oppressive to individuals.

4. **Intoxicating liquors ☞259—Volstead Act presumed to use "nuisance" in ordinary significance.**

It must be presumed that Congress, in enacting Volstead Act, § 21, declaring places for sale of intoxicating liquor common nuisances, and section 22, authorizing the abatement of such nuisances, used the word "nuisance" in its usual and ordinary legal significance, having in mind that it could not pass a law which would wipe out the constitutional rights of the citizen in private property.

5. **Intoxicating liquors ☞260—Sales must be continuous or recurrent, to make place nuisance under Volstead Act.**

Under Volstead Act, § 21, declaring a place for the unlawful sale of intoxicating liquor a common nuisance, it must appear that the sales therein were continuous or recurrent, since authorizing abatement for a single sale would be to authorize a suit in equity, where the legal remedy by prosecution for the sale was adequate.

6. **Intoxicating liquors ☞274—Bill to abate nuisance should allege facts showing inadequacy of legal remedy.**

A bill for the abatement as a nuisance of a place wherein intoxicating liquor is kept for unlawful sale, brought under Volstead Act, § 22, should allege facts which show that the legal remedy by prosecution under that act is inadequate to protect the rights of the public; otherwise, the proceeding, in which defendant is not entitled to a trial by jury, either before the injunction is issued or in proceedings to punish for contempt, under Volstead Act, § 22, and Act Oct. 15, 1914, c. 323, § 24 (Comp. St. § 1245d), might deprive defendant of his right to a trial by jury, guaranteed by Const. Amend. 6.

7. **Injunction ☞129 (1)—Affidavits insufficient to authorize temporary injunction do not require dismissal of bill.**

The insufficiency of affidavits to warrant the issuance of a temporary injunction does not warrant the dismissal of the bill, if its allegations are sufficient to warrant the issuance of an injunction after a final hearing.

8. **Intoxicating liquors ☞13, 274—Congress has full police powers under Eighteenth Amendment as to intrastate transactions; bill to abate nuisance need not allege sales were in interstate commerce.**

Const. Amend. 18, conferred on Congress the full police powers with reference to intoxicating liquors which it could have exercised theretofore with respect to such liquors in interstate commerce, and which the states could have exercised with respect to liquor within their jurisdiction; so that a bill under Volstead Act, § 22, to abate a place for the unlawful sale of liquor as a common nuisance, need not allege that the sales therein were in interstate commerce.

9. **Intoxicating liquors ☞21—Congress can authorize abatement as nuisance of place for illegal sale.**

Congress had authority, under Const. Amend. 18, to enact Volstead Act, §§ 21, 22, declaring a place for the unlawful sale of intoxicating liquor a common nuisance, and authorizing its abatement by injunction.

Liquor Nuisance. Suit by the United States against Jacob Cohen to enjoin the maintenance of a common nuisance under the Volstead

Act. On defendant's motion to dismiss the bill. Motion sustained for defects in form.

Vance J. Higgs, Sp. Asst. Atty. Gen., for the United States.
McCarthy, Morris & Zachritz, of St. Louis, Mo., for defendant.

FARIS, District Judge. The United States filed its bill under the provisions of section 22 of the Volstead Act (41 Stat. 314) to enjoin defendant from maintaining a common nuisance on his premises by the illegal sale thereat of intoxicating liquors, and by unlawfully keeping for sale at and on such premises liquors which contain alcohol in quantities forbidden by that act.

Defendant moved to dismiss plaintiff's bill on divers grounds. Among those demanding notice are: (a) That no cause of action, and no facts sufficient to entitle plaintiff to relief in equity, are set out in the bill; (b) because the supporting affidavits do not sustain the allegations of the bill; (c) because the provisions of the Volstead Act, relied on by plaintiff, invade the police powers of the states, and that the provisions relied on are not warranted by or within the purview of the language of the Eighteenth Amendment; (d) because the bill fails to allege an interstate sale or transportation, whereby alone a federal court could obtain jurisdiction; and (e) because both sections 21 and 22 of the Volstead Act are unconstitutional, for that they deprive defendant of his property without due process of law, and deprive him of the right of trial by a jury of his peers.

Section 21 of the Volstead Act defines the common nuisance, the enjoining of which in a court of equity is provided for by section 22 of the act. This statutory definition, so far as concerns the facts before me, is:

"Any room, house, * * * place where intoxicating liquor is * * * sold, kept or bartered in violation of this title * * * is hereby declared to be a common nuisance."

[1] The above definition does not specifically include the notion of a continuous or a recurrent violation. Neither does it specifically exclude this feature. The common-law definition, without always specifically setting out the elements of a continuousness or recurrence of the things, facts, or acts which constitute the nuisance, yet connotes this notion. Generally, at common law, a nuisance is a wrong arising from an unreasonable or unlawful use of a house, premises, place, or property, to the discomfort, annoyance, inconvenience, or damage of another. Pritchard v. Edison, etc., Co., 92 App. Div. 178, 87 N. Y. Supp. 225.

[2] The word "nuisance" has a well-defined meaning in the law, and a thing cannot be declared a nuisance by statute, and abated as such, when in fact it is obviously not a nuisance. The rule laid down by the Supreme Court of the United States upon this point is that—

"While the Legislature has no right arbitrarily to declare that to be a nuisance which is clearly not so, a good deal must be left to its discretion in that regard, and if the object to be accomplished is conducive to the public interests, it may exercise a large liberty of choice in the means employed." Lawton v. Steele, 152 U. S. loc. cit. 140, 14 Sup. Ct. 502, 38 L. Ed. 385.

This is clearly the farthest limits of the rule, so far as concerns the extent to which the Legislature may encroach on private rights, in the destruction, abatement, or damage of private property as a public nuisance. Further encroachment is forbidden by those provisions of the organic law having reference to the constitutional guaranty of due process of law and forbidding the taking of private property for public use without just compensation. Lawton v. Steele, supra; Austin v. Murray, 16 Pick. (Mass.) 121; Slaughterhouse Cases, 16 Wall. 36, 21 L. Ed. 394; Brown v. Perkins, 12 Gray (Mass.) 89.

[3] The extent of the encroachment upon the rights and property of the individual, permissible to the law-making bodies in the valid exercise of the police power, has been always a most strongly mooted question. Those urging broader constructions have won much ground, but it has been surrendered grudgingly. Generally, in the valid exercise of the police power are included all things essential to the conservation of the public safety, public health, and public morals. But this sweeping general rule is modified by a consideration of the rights of the private individual. Hedging it about is the consideration that—

"To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The Legislature may not, under the guise of protecting public interests, arbitrarily interfere with private business, or impose unusual or unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers is not final or conclusive, but is subject to the supervision of the courts." Lawton v. Steele, 152 U. S. loc. cit. 137, 14 Sup. Ct. 501, 38 L. Ed. 385.

[4] The Congress, therefore, must be deemed to have used the word in its usual and ordinary legal significance, and to have had in mind that it could not pass a law which had the effect to wipe out the constitutional rights of the citizen in private property.

[5] The idea of either continuousness of existence of the things, or facts, or acts, which constitute the alleged nuisance, or the recurrence of such acts, so as to create damage, annoyance, discomfort, or inconvenience, is connoted by the presence of the word "use" in the common-law definition. Discussing a very similar statute of the state of Kansas, the Supreme Court of the United States said:

"The statute is prospective in its operation; that is, it does not put the brand of a common nuisance upon any place, unless, after its passage, that place is kept and maintained for purposes declared by the Legislature to be injurious to the community. Nor is the court required to adjudge any place to be a common nuisance simply because it is charged by the state to be such. It must first find it to be of that character; that is, must ascertain, in some legal mode, whether since the statute was passed the place in question has been, or is being, so used as to make it a common nuisance." Mugler v. Kansas, 123 U. S. loc. cit. 672, 8 Sup. Ct. 303, 31 L. Ed. 205.

I conclude that Congress, by the use of the words "sold, kept, or bartered" in violation of law, meant either habitually, or continuously, or recurrently so sold, kept, or bartered. I do not think that a single sale, without more, and with no evidence of the continuation or

recurrence of law violation, or of facts strongly indicating either habitual sales, or long-continued violations, or such a recurrence of unlawful acts or sales as to colorably indicate that the criminal· prosecutions and penalties provided by other parts of the act are inadequate to cope with. the situation, would constitute a nuisance or warrant the interference of a court of equity by injunction; for in such case it is not ·the crime of selling liquor, or selling a single drink of liquor, by a given person, at a given place, which constitutes the nuisance, but it is the maintenance and use of the room, house, or place as a situs for the doing thereat of unlawful or criminal acts, which constitute the nuisance.

If the Volstead Act is construed to mean that a single sale is sufficient to constitute a nuisance, I should seriously question its validity, for upon such a view we are met by the rule which forbids equity taking jurisdiction where an adequate remedy at law exists, as also the rule that even Congress may not say a thing is a common nuisance, when in fact it is not. For a single sale, without more, and without other overt acts, can be punished by a fine or imprisonment, and a subsequent sale by both such fine and imprisonment. Such remedy was seemingly deemed sufficient, or at least sufficient punishment; otherwise, Congress would have made the penalty more severe. It is fairly well settled that equity will not enjoin the commission of a crime.

[6] The bill before me does not aver that defendant has ever been either prosecuted, or convicted, for making illegal sales of liquor at the premises named in the bill, or at any other place or premises. Neither does it aver, or sufficiently aver, facts meet to constitute a nuisance at common law. It may be that conviction and punishment therefor, as provided elsewhere in the act, would be wholly adequate to stop the alleged unlawful acts of defendant without a resort to a court of equity. Besides, section 21, supra, which defines what shall constitute a common nuisance, also provides:

"That any person who maintains such a common nuisance shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or be imprisoned not more than one year, or both."

In effect, the government is here contending that it may at its election arbitrarily select its forum, either upon the law side or the equity side of the court, in order to initially determine whether defendant is guilty of the maintenance of such a nuisance. If this provision conferring jurisdiction in equity to declare the existence of a common nuisance is to be upheld at all as constitutionally valid, of necessity, I think, it must be upon some such ground that any and all other remedies are inadequate. Some· facts ought to be pleaded tending to show such adequacy of the law remedy or remedies.

Moreover, absent all such allegations in the bill, and, on a hearing, absent proof thereof, it is questionable whether defendant is not, upon any other view, deprived of the ,right of trial by jury, guaranteed to him by the Sixth Amendment to the Constitution. This arises from the fact that, after the granting of an injunction, any violations of such injunction constitute, under the provisions of section 21, supra, a contempt of court, ·which contempt of court is summarily triable by the

court without a jury. Section 22 of the Volstead Act; section 24 of Act of October 15, 1914, c. 323, 38 Stat. 739 (Comp. St. § 1245d). And upon a finding by the court that the defendant is guilty of contempt he must be punished by a fine of not less than $500 nor more than $1,000, or by imprisonment, not less than 30 days nor more than 12 months, or by both such fine and imprisonment.

I am mindful of what was said as to a jury trial in the case of Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205. But I do not think the point here involved is the same as the point there involved; for there the contention made, or at least the question seemingly discussed by the Supreme Court of the United States, was whether the defendant, in a trial before the chancellor sitting to hear the action in equity for abatement as a common nuisance and injunction, was entitled to a jury. The Supreme Court held that no federal constitutional guaranty was violated by a state statute which denied to the accused a jury on such a trial. Here the point is whether, in view of the definition of a nuisance as contained in section 21 of the Volstead Act, and in view of the misdemeanor there denounced for the maintenance of the nuisance, and of the statutes making the illegal manufacture and sale of intoxicating liquors punishable offenses under said act, there do not exist remedies at law which preclude equitable jurisdiction till the remedy at law has been followed and has measurably failed to accord relief, or until by apposite averments in the bill it can be seen that the remedies at law will not afford relief. State ex rel. v. Crawford, 28 Kan. 726, 42 Am. Rep. 182.

[7] The affidavits here are in my view insufficient as a matter of law to warrant the issuance of a temporary injunction. It is to be noted, however, that the affidavits are to be construed only as apposite upon the point touching whether the court before a final hearing shall issue a temporary injunction. Insufficient affidavits, present a sufficient bill, would not preclude a perpetual injunction after a final hearing. In short, the affidavits seem to go to the authority of the court to issue a temporary injunction, and, the bill being sufficient, these affidavits have no bearing upon the authority of the court, after a final hearing, to perpetually enjoin.

I conclude that, upon the two points first above reserved for discussion, the motion to dismiss ought to be sustained. These are curable, however, by amendment of the bill, if so it be that plaintiff is so advised, and the facts at hand so warrant.

[8] The points urged that the provisions of section 22 invade police powers of the state, and that, since no phase of interstate commerce is involved, the plaintiff has no standing and the federal court no jurisdiction, may be considered together, and disallowed almost out of hand, under the doctrine announced by the Supreme Court in the case of Rhode Island v. Palmer, 253 U. S. 350, 40 Sup. Ct. 486, 64 L. Ed. 946. It may be conceded that the provisions of the Volstead Act, in so far as they provide for the exercise of police powers by the Congress, would have been unwarranted and unconstitutional before the adoption of the Eighteenth Amendment; but one of the chief things accomplished by that amendment was, as to the manufacture, trans-

portation, and traffic in intoxicating liquor, to confer police powers on Congress, and to extend those powers into the territories of the several states. State of Rhode Island v. Palmer, supra.

[9] Practically the effect of the Eighteenth Amendment was to confer on Congress the same powers to deal with the manufacture, sale, and transportation of intoxicating liquors intrastate as it formerly possessed interstate, and also to confer on Congress the same police powers therein, and in any state, that the several states themselves had within their own territorial limits, on the same subjects, before the adoption of the Eighteenth Amendment. Taking this view, which is a hurried expression and construction of a far-reaching condition, and of a far-reaching statute, it follows that what a state could do within its own territorial limits before the adoption of the Eighteenth Amendment to stamp out the manufacture, sale, and transportation of liquor, Congress may now do.

It follows that this is true not only as to interstate commerce, but as to intrastate commerce. If a state could, as a part of its police powers, in furtherance of its efforts to prevent the manufacture, sale, and transportation of intoxicating liquors enjoin the use of houses, premises, and places of manufacture and sale as a common nuisance, Congress may now likewise pass a law to enjoin within any state such things as common nuisances. The power of a state to do this identical thing by a statute very similar to that before me here, came before the United States Supreme Court in the case of Mugler v. Kansas, supra, wherein (123 U. S. at page 672, 8 Sup. Ct. 303 [31 L. Ed. 205]) it was said:

"Equally untenable is the proposition that proceedings in equity for the purposes indicated in the thirteenth section of the statute are inconsistent with due process of law. 'In regard to public nuisances,' Mr. Justice Story says, 'the jurisdiction of courts of equity seems to be of a very ancient date and has been distinctly traced back to the reign of Queen Elizabeth. The jurisdiction is applicable, not only to public nuisances, strictly so called, but also to purprestures upon public rights and property. * * * In case of public nuisances, properly so called, an indictment lies to abate them, and to punish the offenders. But an information, also, lies in equity to redress the grievance by way of injunction.' 2 Story's Eq. §§ 921, 922. The ground of this jurisdiction in cases of purpresture, as well as of public nuisances, is the ability of courts of equity to give a more speedy, effectual, and permanent remedy, than can be had at law. They cannot only prevent nuisances that are threatened, and before irreparable mischief ensues, but arrest or abate those in progress, and, by perpetual injunction, protect the public against them in the future; whereas courts of law can only reach existing nuisances, leaving future acts to be the subject of new prosecutions or proceedings. This is a salutary jurisdiction, especially where a nuisance affects the health, morals, or safety of the community. Though not frequently exercised, the power undoubtedly exists in courts of equity thus to protect the public against injury. District Attorney v. Lynn & Boston Railroad Co., 16 Gray, 242, 245; Attorney General v. New Jersey Railroad, 2 Green, Ch. 139; Attorney General v. Tudor Ice Co., 104 Mass. 239, 244; State v. Mayor, 5 Porter (Ala.) 279, 294; Hoole v. Attorney General, 22 Ala. 190, 194; Attorney General v. Hunter, 1 Dev. Eq. 12; Attorney General v. Forbes, 2 Myl. & Cr. 123, 129, 133; Attorney General v. Great Northern Railway Co. 1 Drew & Sm. 154, 161; Eden on Injunctions, 259; Kerr on Injunctions (2d Ed.) 168."

I conclude, therefore, from the above premises that (a) the bill before me does not state sufficient facts to warrant granting the relief prayed for; (b) that the affidavits filed in support of the bill do not warrant the issuance of a temporary injunction; (c) that, present facts to justify, the bill may be amended so as to state a cause of action; (d) that, being so amended, upon final hearing a perpetual injunction is grantable under the provisions of sections 21 and 22 of the Volstead Act, should the facts adduced in evidence so warrant; (e) that the remedy by injunction to abate a common nuisance defined by section 21 of the Volstead Act, when construed as herein, is a lawful and appropriate method and remedy for the enforcement of the objects of that act in aid of the law remedies provided, whenever the latter are shown to be inadequate; (f) that sections 21 and 22 are warranted by and are within the constitutional purview of the Eighteenth Amendment and that when properly construed they are not unconstitutional; (g) that while, when enforced within the body of the state in matters purely intrastate, they invade the police powers of the several states, yet such invasion is provided for and warranted by the Eighteenth Amendment, and is therefore not forbidden and is not now unconstitutional; (h) that proper facts being shown as antecedently existing to warrant equitable jurisdiction, the right of trial by jury is not infringed; (i) that defendants are not entitled to a trial by a jury either upon a hearing of a suit to abate and enjoin, or upon a trial of any contempt which may grow out of a violation of any injunction which may be granted. 38 Stat. 739.

It results, however, that the motion to dismiss for defects in form and pleading should be sustained to the bill as now drawn. Let it be so ordered.