## UNITED STATES v. REISENWEBER et al.

(Circuit Court of Appeals, Second Circuit. January 18, 1923.)

No. 138.

1. **Constitutional law ⬤⟶312—Intoxicating liquors ⬤⟶259—Statute authorizing abatement of liquor nuisances does not deny due process of law.**

National Prohibition Act, tit. 2, §§ 21, 22, 24, providing for the abatement of liquor nuisances by a suit in equity and the granting of an injunction, are not invalid, as depriving parties of their property without due process of law.

2. **Intoxicating liquors ⬤⟶260—Nuisance ⬤⟶59—Place where intoxicating liquors are sold was not "nuisance" at common law; "public nuisance" defined.**

A "nuisance," in the common understanding, is anything which annoys, vexes, or harms, and it is a "public nuisance" if it affects the rights enjoyed by citizens as part of the public, or a place where the public has a legal right to go, or where the public is likely to come within its influence, and a place where intoxicating liquors are sold is not a nuisance at common law.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Nuisance; Public or Common Nuisance.]

3. **Nuisance ⬤⟶60—Legislature can change common law.**

It is within the province of the legislative body to prescribe what shall constitute a nuisance, and it may make that a nuisance which was not one at common law.

4. **Intoxicating liquors ⬤⟶21—Congress had power to declare places for sale of liquors common nuisances.**

Since the Eighteenth Amendment makes traffic in intoxicating liquors for beverage purposes unlawful, it was within the constitutional power of Congress to enact, as it did by National Prohibition Act, tit. 2, § 21, that any place where such liquor is manufactured, sold, kept, or bartered in violation of the act shall be a common nuisance.

5. **Intoxicating liquors ⬤⟶21—Congress had power to authorize suit in equity to enjoin liquor nuisance.**

Congress has constitutional power to authorize an action to enjoin a liquor nuisance in any court having jurisdiction to hear and determine equity cases, as it did by National Prohibition Act, tit. 2, § 22, since the power of courts of equity in proper cases to enjoin the continuance of an existing nuisance is well settled.

6. **Intoxicating liquors ⬤⟶261—Suit to abate nuisance need not wait determination of nuisance at law.**

Even though the facts which make a place a nuisance under the National Prohibition Act are disputed, and are involved in pending prosecutions for violations of that act, a suit in equity to abate a liquor nuisance under that act need not await the determination of the existence of the nuisance in the actions at law, since one of the purposes of the provision for abatement was to provide more speedy relief, and it could not be more speedy if it must await the outcome of the legal prosecutions.

7. **Intoxicating liquors ⬤⟶275, 279—Evidence held to show place was nuisance, and that injunction was violated.**

Evidence of four separate sales of intoxicating liquor in defendants' restaurant, and of deliveries of liquors similar to those served to the officers to other patrons of the restaurant, and of scenes of intoxication therein, is sufficient to show the place was a common nuisance, and evidence that, after an injunction against such sales, sales had been made on five occasions, and there were scenes of intoxication in the restaurant on one occasion, is sufficient to show a violation of the injunction.

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. Criminal law ⊜⟹37—Furnishing opportunity to commit offense is not entrap-ment.**

> The fact that government officers furnished defendants with an oppor-tunity to commit an offense by purchasing intoxicating liquor from them in their restaurant does not show entrapment into commission of the offense, nor prevent a court of equity from entering a decree abating the place as a common nuisance under the National Prohibition Act, on evi-dence of sales made to such officers.

Appeal from the District Court of the United States for the South-ern District of New York.

Suit in equity by the United States against John Reisenweber and others, and Fifty-Eight Street Restaurant Company, Inc., and others, to abate a public and common nuisance under the National Prohibi-tion Act. From an order modifying a decree of abatement by strik-ing therefrom the provision which suspended for six months the re-quirement that the premises be closed, and directing the closing of the premises for one year, the defendants Fifty-Eight Street Restau-rant Company and others appeal. Affirmed.

Griffiths, Sarfaty & Content, of New York City (Max D. Steuer, Charles H. Griffiths, and Elijah N. Zoline, all of New York City, of counsel), for appellants.

William Hayward, U. S. Atty., of New York City (John Holley Clark, Jr., and Victor House, Asst. U. S. Atty., both of New York City, of counsel), for the United States.

Before ROGERS and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

ROGERS, Circuit Judge. The United States filed the bill of com-plaint in this suit pursuant to authority granted in section 22, title II, of the Act of Congress of October 28, 1919, known as the "Na-tional Prohibition Act" (41 Stat. c. 85, pp. 305, 314). The suit was brought for the purpose of enjoining and abating what the bill alleged to be "a certain public and common nuisance" as defined in section 21, title II, of the act of Congress above referred to. The section may be found in the margin.[1]

The complaint alleged that the premises at Nos. 981, 983, and 985 Eighth avenue, in the borough of Manhattan and city of New York, were used and maintained as a place where intoxicating liquors are habitually, continually, and recurrently sold, kept, and bartered for beverage purposes in volation of the provisions of title II of the act. The complaint further alleged, on information and belief, that un-less restrained and forbidden by injunction the defendants would con-tinue in the future to keep, maintain, and use the premises as a place where intoxicating liquor is manufactured, sold, kept, or bartered in

---

[1] "Sec. 21. Any room, house, building, boat, vehicle, structure, or place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of this title, and all intoxicating liquor and property kept and used in main-taining the same, is hereby declared to be a common nuisance, and any per-son who maintains such a common nuisance shall be guilty of a misdemeanor and upon conviction thereof shall be fined not more than $1,000 or be im-prisoned for not more than one year or both. * * *"

violation of title II of the act, and as a common and public nuisance as defined in section 21 of title II.

It asked that the defendants be perpetually enjoined and restrained from using, maintaining, and assisting in using and maintaining the said premises as a place where intoxicating liquor is manufactured, sold, kept, or bartered in violation of title II of the act. It further prayed that the court would issue its process, directing the marshal for the district summarily to abate the said public and common nuisances then existing upon the said premises, and for that purpose to take possession of all liquor, fixtures, and other property used on the premises, and to remove the same to a place of safe-keeping to abide the further order of the court.

It further prayed that the court would enter a decree directing that no intoxicating liquor as defined in title II of the act should be manufactured, sold, bartered, or stored in the premises or any part thereof, and that said premises should not be occupied or used for one year after the date of said decree. It also asked for a decree directing that all intoxicating liquor then on the premises should be destroyed, or, upon the application of the United States attorney, should be delivered to such department as he should designate, for medicinal, mechanical, or scientific uses, or that the same should be sold at private sale for such purposes to any person having a permit to purchase liquor, and that the proceeds thereof be covered into the treasury of the United States as provided in section 27 of title II of the act.

The court, on July 6, 1922, adjudged that Reisenweber's Restaurant, occupying the two upper floors of the premises on Eighth avenue already mentioned, were a common nuisance, and an injunction issued restraining the defendants, their servants, agents, and employees, from manufacturing, selling, bartering, or storing in the premises, or any part thereof, any liquor containing one-half of 1 per cent. or more of alcohol by volume. It decreed that Reisenweber's Restaurant be not occupied or used for one year from the date of the order, and it directed the marshal to lock and seal all of the entrances and exits to the restaurant, and to prevent for the period of one year from the going into effect of the decree the occupation or use of the premises for any purpose whatever.

The court, however, suspended for six months the operation of that part of the decree providing for nonoccupation or use for a period of one year, provided the Restaurant Company should give a bond in the penal and liquidated sum of $1,000 and conditioned that intoxicating liquor would not thereafter be manufactured, sold, bartered, kept, or otherwise disposed of in the premises, and that it would pay all fines, costs, and damages that might be assessed for any violation upon said property and any provision of title II of the act. And the court extended the term for six months, during which time the defendants, or any of them, upon proof that there had not been any violation of the terms of the decree, were given the right to apply to the court for a modification of the decree "in such manner as may be proper."

In September, 1922, application was made to the District Court for an order to show cause why the order of July 6, 1922, should not

be modified, by striking from the order the provision thereof which suspends for six months the provision of said decree adjudging that the restaurant known as Reisenweber's, located in premises described in said decree, be not occupied or used for one year, and why said decree should not be further modified, so that it might order and direct the immediate locking and sealing of all the entrances and exits to the said restaurant, for the purpose of preventing for the period of one year the occupation or use of the said premises for any purposes whatsoever, and for such other relief as might be proper. This order to show cause was based upon the allegation that the parties restrained had been guilty of violating the order, and after hearing upon the order to show cause, and after proof had been taken in open court, the judge in an opinion filed on October 11, 1922, stated that he was convinced that there had been a violation of the decree, and because of such violation he granted the relief which the government asked, and struck from the original order the portion thereof above referred to.

[1] Sections 21, 22, and 24 of title II, providing for the abatement of liquor nuisances by a suit in equity and the granting of an injunction, are not unconstitutional on the ground that the parties are deprived of their property without due process of law. Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205; Lewinsohn v. United States (C. C. A.) 278 Fed. 421; Eilenbecker v. District Court, 134 U. S. 31, 10 Sup. Ct. 424, 33 L. Ed. 801; In re Chapman, 166 U. S. 661, 17 Sup. Ct. 677, 41 L. Ed. 1154. In the first of these cases the court said:

"As to the objection that the statute makes no provision for a jury trial in cases like this one, it is sufficient to say that such a mode of trial is not required in suits in equity brought to abate a public nuisance."

[2] The complaint charges that the defendants use the premises complained of as a common and public nuisance, contrary to the provisions of the Prohibition Act. A nuisance, in the common understanding, is anything which annoys, vexes, or harms; and a nuisance is said to be a public one, if it affects the rights enjoyed by citizens as part of the public. Knox v. New York, 55 Barb. (N. Y.) 404; King v. Morris, etc., R. Co., 18 N. J. Eq. 397. It has been defined as public when it affects a place where the public has a legal right to go, or where the public is likely to come within its influence. Burlington v. Stockwell, 5 Kan. App. 569, 47 Pac. 988. It has been laid down as a general rule that every unlawful use by a person of his own property in such a way as to cause material annoyance to other persons or to the public generally constitutes a nuisance. Baltimore, etc., R. Co. v. Fifth Baptist Church, 108 U. S. 317, 2 Sup. Ct. 719, 27 L. Ed. 739; Davis v. Sawyer, 133 Mass. 289, 43 Am. Rep. 519.

A place where intoxicating liquors are sold is not a nuisance at common law. Commonwealth v. McDonough, 13 Allen (Mass.) 571. Prior to St. 5 & 6 Eliz. 6 it was lawful in England for any one to keep an alehouse without a license; it being regarded as a legitimate means of livelihood, which any one was free to follow. If it was disorderly kept, it was indictable as a nuisance. Stephens v. Watson, 1 Salk. 45.

[3, 4] It is, however, within the province of the legislative body to prescribe what shall constitute a nuisance, and it may make that a nuisance which was not one at common law. See Moses v. United States, 16 App. D. C. 428, 50 L. R. A. 532; State v. Beardsley, 108 Iowa, 396, 79 N. W. 138; State v. Tower, 185 Mo. 79, 84 S. W. 10, 68 L. R. A. 402. And inasmuch as the Eighteenth Amendment makes the traffic in intoxicating liquors for beverage purposes unlawful, we do not doubt the constitutional power of Congress to enact that any place "where intoxicating liquor is manufactured, sold, kept, or bartered in violation of this title, and all intoxicating liquor and property kept and used in maintaining the same, is hereby declared to be a common nuisance," as provided in section 21.

[5] It is equally free from doubt that Congress has the constitutional power to authorize that an action to enjoin the nuisance can be brought in any court having jurisdiction to hear and determine equity cases, as provided in section 22. The power of courts of equity in proper cases to enjoin the continuance of an existing nuisance is well settled, although in the absence of a statute authorizing it there may be doubt whether an equity court has any jurisdiction over a public nuisance not violating property rights. See Attorney General v. Utica Insurance Co., 2 Johns. Ch. (N. Y.) 371.

[6] The language of the section is that the action to be brought "shall be brought and tried" as an action in equity; and it appears that the defendants were arrested and indicted for each alleged violation of the act charged in the instant case, and that none of the defendants had been tried under the indictments prior to the bringing of this action in equity. The appellants, therefore, complain that the government has undertaken to convict them without a trial by jury and in advance of the trial of the criminal cases. Their counsel stated that he did not maintain that in a clear case, where the place maintained is per se a nuisance and can be nothing else, that a court of equity must await the verdict in the action at law. But, he said, if the thing sought to be abated as a nuisance is not per se a nuisance, but may or may not be a nuisance in accordance with the circumstances in which the premises may be used, it is the universal rule that a court of equity will not interfere to abate the thing complained of as a nuisance, until it has been found to be such by a jury in the action at law. We admit that the courts of equity at one time were very reluctant to exercise their jurisdiction over a nuisance, until after the right and question of nuisance had been first settled at law. In more modern times the same reluctance has not always been shown, it not being insisted upon in all cases that the nuisance should be first established at law. See 29 Cyc. 1221, and cases there cited.

The case of United States v. Cohen (D. C.) 268 Fed. 420, decided in the Eastern district of Missouri, lends support to the argument for the appellants that the action should not be instituted in equity until after proceedings have been prosecuted at law. We have considered that case with some care, but with all due respect to the learned judge who decided it we are unable to follow it. It seems to us in conflict with Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L.

Ed. 205. In that case the prohibition statute of the state of Kansas, passed prior to the adoption of the Eighteenth Amendment, was before the court. The statute provided that any place kept and maintained for the illegal manufacture and sale of intoxicating liquors should be deemed a common nuisance and abated, and it at the same time provided for the indictment and trial of the offender. The Supreme Court of the United States held that the Kansas statute permitted both proceedings in equity for the abatement of the nuisance and prosecution of the offenders under the criminal law, and that the two remedies were independent. In the course of its opinion in that case the Supreme Court, after stating that the jurisdiction of equity over nuisances seemed to be "of a very ancient date," declared that in the case of public nuisances an indictment lies to abate them and to punish the offenders, and that an information also lies in equity to redress the grievance by way of injunction. It then proceeded to point out that the ground of the jurisdiction in the case of public nuisances is the ability of the equity courts to give a more speedy, effectual, and permanent remedy than can be had at law. We venture to say that it has not yet been explained how the remedy in equity can be more speedy than the one at law, if the equity suit cannot be commenced until the action at law has been concluded.

The case of United States v. Cohen, supra, has been disapproved in Lewinsohn v. United States (C. C. A.) 278 Fed. 421, and in United States v. Eilert Brewing & Beverage Co. (D. C.) 278 Fed. 659. In United States v. Cohen, supra, the District Judge expressed the opinion that, in order to constitute a common nuisance under the act now under consideration, it would be necessary to show a more or less continuous violation of law, and that if a single violation of law only is proved equity may not take jurisdiction. This court held in Wiggins v. United States (C. C. A.) 272 Fed. 41, that a single violation of the act was sufficient. A similar ruling was made by the Circuit Court of Appeals in the Ninth Circuit in Young v. United States, 272 Fed. 967.

[7] While we think that a single sale of intoxicating liquor, with attending circumstances indicating other dealing in such liquor is sufficient, as we held in the Wiggins Case, to constitute a place a common nuisance within the meaning of the Prohibition Act, there was evidence in the instant case of four separate sales of such intoxicating liquor to government officers in the defendants' restaurant, on December 21, 1921, December 30, 1921, January 14, 1922, and January 18, 1922, and evidence of deliveries of liquors similar to those served to the officers to other patrons of the restaurant, and evidence of scenes of intoxication in the restaurant, and at the hearings on September 20, and 22, 1922, the government proved by a police officer sales of liquor to a patron of the restaurant and scenes of intoxication on August 23, 1922, and by a patron sales of champagne to him at least on five occasions, on August 24, August 31, September 5, September 6, and September 8, 1922, and scenes of "exhilaration." Certainly the proof is ample to satisfy the statute. We shall not herein review the evidence which the transcript contains. It is sufficient to

say that we have read it, and are convinced by it that intoxicating liquor was sold in violation of the act in the restaurant maintained on the premises involved, both prior to and after the restraining order of July 6, 1922.

[8] But it is said that a court of equity cannot sanction a decree for alleged violations induced, solicited, and encouraged by government agents; and we are cited to numerous decisions laying down the rule that, where the violation of the law originated with a person in the employ of the state or the government, and who was acting for the purpose of entrapping the defendant, the latter cannot be convicted of the offense which he was thus induced to commit. Butts v. United States, 273 Fed. 35, 18 A. L. R. 143; United States v. Lynch (D. C.) 256 Fed. 983; Peterson v. United States, 255 Fed. 433, 166 C. C. A. 509; Voves v. United States, 249 Fed. 191, 161 C. C. A. 227; Yick v. United States, 240 Fed. 60, 153 C. C. A. 96; Woo Wai v. United States, 223 Fed. 412, 137 C. C. A. 604; State v. Dougherty, 88 N. J. Law, 209, 96 Atl. 56, L. R. A. 1916C, 991, Ann. Cas. 1917D, 950; Connor v. People, 18 Colo. 373, 33 Pac. 159, 25 L. R. A. 341, 36 Am. St. Rep. 295. The law respecting inducement to crime and entrapment of criminals by government agents is, however, quite well settled. The question is not a new one in this court, and we have held that there is no unlawful inducement or solicitation to crime where the government officers merely furnish a criminal, who is ready to commit an offense if he thinks it is safe, with an opportunity for doing so.

If an officer of the law has reason to believe that the law is being violated, he may proceed to ascertain whether those who are thought to be doing so are actually committing it. See Lucadamo v. United States (C. C. A.) 280 Fed. 653, 657; Martin v. United States (C. C. A.) 278 Fed. 913; Rothman v. United States (C. C. A.) 270 Fed. 31, 35. If the officers of the government act in good faith and in the honest belief that the defendant is engaged in an unlawful business, of which the offense charged in the indictment is a part, and the purpose of the entrapment is not to induce an innocent man to commit a crime, but to secure evidence upon which a guilty man can be brought to justice, the defense of entrapment is without merit. Fisk v. United States (C. C. A.) 279 Fed. 12, 18; Billingsley v. United States (C. C. A.) 274 Fed. 86; Butts v. United States (C. C. A.) 273 Fed. 35, 37, 18 A. L. R. 143. The rule governing this subject is correctly stated in 16 Corpus Juris, 88, where it is said:

"While it has been said that the practice of entrapping persons into crime for the purpose of instituting criminal prosecutions is to be deplored, and while instigation, as distinguished from mere entrapment, has often been condemned, and has sometimes been held to prevent the act from being criminal or punishable, the general rule is that it is no defense to the perpetrator of a crime that facilities for its commission were purposely placed in his way, or that the criminal act was done at the 'decoy solicitation' of persons seeking to expose the criminal, or that detectives feigning complicity in the act were present and apparently assisting in this commission. Especially is this true in that class of cases where the offense is one of a kind habitually committed and the solicitation merely furnishes evidence of a course of conduct."

And see Luterman v. United States (C. C. A.) 281 Fed. 374, 377. The decisions of the Supreme Court of the United States sanction a decree for violations of law, where the evidence was obtained, as in this case, through government detectives. Andrews v. United States, 162 U. S. 420, 16 Sup. Ct. 798, 40 L. Ed. 1023; Price v. United States, 165 U. S. 311, 17 Sup. Ct. 366, 41 L. Ed. 727; Rosen v. United States, 161 U. S. 29, 16 Sup. Ct. 434, 480, 40 L. Ed. 606; Goode v. United States, 159 U. S. 663, 16 Sup. Ct. 136, 40 L. Ed. 297; Grimm v. United States, 156 U. S. 604, 15 Sup. Ct. 470, 39 L. Ed. 550.

The decree of July 6, 1922, as modified by the order dated October 11, 1922, is affirmed, and the mandate of this court shall state specifically that the period of one year, during which time the restaurant known as Reisenweber's shall remain closed and not occupied or used for any purpose whatsoever, begins to run from the date the mandate is filed.