### DEFENSES IN A "PADLOCK" PROCEEDING.

Common Pleas Court of Butler County.

STATE OF OHIO EX REL P. P. BOLI, PROSECUTING ATTORNEY, v. LEE RICHARDSON AND ANNA L. MAXWELL.

STATE OF OHIO EX REL P. P. BOLI, PROSECUTING ATTORNEY, v. JOHN W. CASEY AND ODA LEE CASEY.

STATE OF OHIO EX REL P. P. BOLI, PROSECUTING ATTORNEY, v. DAN BOWLING, GILBER BOWLING AND VERONICA SCHEBEN.

Decided, December 24, 1923.

*Intoxicating Liquors—Constitutionality of the "Padlock Law" with its Denial of a Jury Trial—Legislature Empowered to Define what Constitutes a Nuisance—Proceedings to Abate a Nuisance— Habitual Violation Need not be Shown—The Outgrown Holding in 3d Ohio State.*

1. In an action brought by a procecuting attorney under the provisions of 110 O. L., 34, commonly known as the "padlock law," the defense does not lie of unconstitutionality of the law because of substitution of an equity proceeding for an action at law with consequent deprivation of the right of trial by jury, nor for the further reason that forfeiture of property is provided as a punishment for crime.

2. The holding in 3d Ohio St., 475, construing the act of 1854, that the place involved must be shown to be one "where liquors are habitually sold in violation of the act," is now without force or effect in view of the provision of the present law that "it shall not be necessary for the court to find the property involved was being unlawfully used as aforesaid at the *time* of the hearing."

3. The defense of laches, in that the "padlock" proceeding was not brought for eighty-five days after the raid on the premises, will not be given consideration where the defendant entered a plea of guilty in the trial following the raid.

*P. P. Boli,* Prosecuting Attorney, for plaintiffs.

*M. O. Burns, Vincent Pater* and *Clinton Egbert,* for defendants.

HARLAN, J.

The court will dispose of these three cases together because

the legal questions raised are the same in all cases, and while there is some variance in the facts they are very similar.

The action is brought by the prosecuting attorney by virtue of the act passed February 23, 1923, 110 O. L. p. 34 commonly known as the padlock law. It provides among other things that "any room, house, building," etc., "where intoxicating liquor is manufactured, sold, bartered, possessed or kept in violation of law, and all property occupied and used in maintaining the same, and all property designed for the unlawful manufacture of intoxicating liquor, and liquor contained therein is hereby declared to be a common nuisance."

It provides by what officials the action may be brought, one of them being a prosecuting attorney of any county.

It provides that it shall not be necessary for the court to find that the property was being unlawfully used at the time of the hearing, and that the court may order that the room, house, or other place shall not be occupied for one year thereafter.

The petitions charge that the defendants in the respective cases were proprietors of places carried on in violation of this act, and also make the owners parties defendant, and set forth somewhat in detail the violations of the law alleged and prays for the relief provided for by the statute.

The answers deny in the main the allegations of the petition, but aver that all proceedings where there were pleas of guilty in the court of M. Y. Shuler, justice of the peace, were under duress, coercion and threats practiced upon the defendants by the prohibition officers which induced the pleas of guilty.

They further plead that if at any time there was a nuisance, it has been abated, and at the time of filing these answers there were no nuisances; and further that the plaintiff has been guilty of laches, and that the law is unconstitutional because it attempts to substitute a proceeding in chancery, for an action at law and deprive the defendants of a right of trial by jury, and for the further reason that it attempts to forfeit a man's property as a punishment for crime.

The evidence disclosed that at the places described in the

petition there had been sales to prohibition officers.

In the case against Richardson the evidence disclosed that there had been sales on two different occasions, and also the same state of facts in the case against Bowling, but in the case against Casey there had been but one sale..

All three of the defendants who were proprietors were tried before M. Y. Shuler, justice of the peace, and all pleaded guilty.

Richardson paid his own fine and also the fines of those who were charged with being his bartenders, to-wit Ollie Mitchell and Joe Richardson. Casey paid the fines and the attorney fee of Jennie Clark, who was charged with selling liquor.

In the justice's court, all of the defendants were represented by counsel and the pleas were made with the knowledge and acquiescense of their counsel.

In the Bowling case, at the time of the first raid by the prohibition officers, the defendant Daniel Bowling was charged with resisting the' officers, and was fined therefor, although he had an explanation of his conduct on that occasion in the instant case.

In all of the cases testimony was offered by the plaintiff of the general reputation of the respective places as being places where intoxicating liquor was sold in violation of law. This evidence was admitted without objection except in the Richardson case. There was no evidence in contradiction of such evidence on the part of any of the defendants. The only witnesses on behalf of the defendant in the Richardson case was Lee Richardson and Anna Maxwell, the owner of the property.

In the Casey case, John W. Casey, and his wife, and in the Bowling case Dan Bowling and the owner of the property, Mrs. Scheben.

The court had the parties and the witnesses before it, and upon a consideration of the whole case, finds that the plaintiff proved the material allegations of the petition, and finds there was no duress or coercion practiced by the prohibition officers to cause the pleas of guilty.

Now as to the law: .

There is an absence of reported cases under this act because

it was so recently enacted, but its provisions follow almost literally the provisions of the National Prohibition Law known as the Volstead act, and there are several decisions by the federal courts which are very illuminating on the questions of law raised here.

First as to the constitutionality.

The Volstead Act has been held not in violation of the Constitution of the United States, 253 U. S. 350, 40 Supreme Court, 486.

The law was attacked as unconstitutional as violating the due process of law clause, and the provision of trial by jury and the double jeopardy provision of the Constitution.

The Federal Courts which have passed upon the question, quote with approval the case of *Muggler* v. *Kansas,* 123 U. S., 623. Same decision, 8 Supreme Court, 273, which was a Kansas prohibition case. The language quoted is as follows:

"The state having authority to prohibit the manufacture and sale of intoxicating liquors for other than medical, scientific, and mechanical purposes, we do not doubt her power to declare that any place kept and maintained for the illegal manufacture and sale of such liquors, shall be deemed a common nuisance, and be abated, and at the same time, to provide for the indictment and trial of the offender. One is a proceeding against the property used and forbidden purposes while the other is for the punishment of the offender. * * * In regard to public nuisances, Mr. Justice Story says, 'the jurisdiction of courts of equity seems to be of very ancient date, and has been distinctly traced back to the reign of Queen Elizabeth. * * * In case of public nuisances, properly so called, an indictment lies to abate them, and to punish the offenders. But an information, also, lies in equity to redress the grievance by way of injunction.' 2 Story Eq. Sec. 921, 922. The ground of this jurisdiction in cases of purpresture, as well as of public nuisance, is the ability of courts of equity to give a more speedy, effectual and permanent remedy, than can be had at law. They can not only prevent nuisances that are threatened, and before irreparable mischief ensues, but arrest or abate those in progress, and by perpetual injunction, protect the public against them in the future; whereas courts of law can only reach existing nuisances, leaving future acts to be the subject of new prosecutions or proceedings. This is a

salutary jurisdiction, especially where a nuisance affects the health, morals, or safety of the community. Though not frequently exercised, the power undoubtedly exists in courts of equity thus to protect the public against injury. * * * As to the objection that the statute makes no provision for a jury trial in cases like this one, it is sufficient to say that such a mode of trial is not required, in suits of equity brought to abate a public nuisance."

See also In re Bieber, 283 Fed., 857; Lewinsohn v. U. S., 278, Fed. 421; U. S. v. Reisenweber et al, 288 Fed., 520.

Where the questions raised in the instant case are all fully discussed and decided, and it has been uniformly held that the national act, after which the Ohio act is so closely modeled, does not violate the provision of the Constitution.

However, it was decided by the Supreme Court of Ohio in Miller v. State, 3 O. S., p. 475, that:

"No conviction shall work a forfeiture of estate, and hence there is no power to deprive a man of the use of his property unless it be necessary in order to abate an existing nuisance."

But the Ohio law contains a provision evidently aimed to overcome the decision quoted. That provision reads as follows:

"It shall not be necessary for the court to find the property involved was being unlawfully used as aforesaid at the time of the hearing."

The Legislature undoubtedly had the right to define what constitutes a nuisance, and if it saw fit to prescribe such a state of facts as one of the conditions; it was certainly within its right in so doing.

Furthermore, the contention of the prosecuting attorney on this point has great weight, when he points out that there never could be an abatement of such nuisance if the defendant would be allowed to come into court and claim that he had reformed and discharged his bar-keepers, etc. But the court would be justified in judging them by their former conduct.

The above case in 3d O. S., holds in construing the prohibition act of 1854 that "it must be a place where liquors were

or are *habitually* sold in violation of the act, and that a single sale does not make the place a nuisance.

The court has carefully read all the provisions of the act of 1854, and with all due respect to the learned court, this court can not see what there was in that act that required that sales were habitually made in violation of that act. This court prefers to follow the cases under the National act of which *Singer* v. *U. S.*, 288 Fed. 695 is an example. The first syllabus reading as follows:

"The test of a nuisance under the National Prohibition Act is not the number of sales or the length of time liquor is kept on the premises, but whether the place is maintained for the keeping and selling of liquor in the sense of the statute, and other essentials being present a single sale may establish the fact." See also 278 Fed., 659 and 421; 279 Fed. 107; 289 Fed. 249.

It is further contended that the plaintiff was guilty of laches in that 85 days had elapsed from the time of the first raid.

Laches is an important doctrine in equity, but when it is raised by a confessed law breaker in defense of an action brought by an officer of the law because of the violation of law, it does not commend itself to the court.

Entries may be prepared decreeing the places described in the petition as nuisances, and that they shall not be occupied or used for the period of one year.